In re Francis Dale SAMFORD, Debtor.

**Ray EMRICH and Betty Emrich, Plaintiffs,**

v.

**Francis Dale SAMFORD, Defendant.**

**Bankruptcy No. 382–02439.
Adv. No. 382–0731.**

United States Bankruptcy Court, M.D. Tennessee.

April 17, 1984.

See also, Bkrtcy., 39 B.R. 428.

Larry K. Tolbert, Murfreesboro, Tenn., for plaintiffs.

Steven L. Lefkovitz, Nashville, Tenn., for debtor.

## MEMORANDUM

GEORGE C. PAINE, II, Bankruptcy Judge.

The plaintiffs, Ray Emrich and Betty Emrich, initiated this adversary proceeding in an attempt to recover a debt of $30,-000.00 from the debtor, Francis Dale Samford. The plaintiffs seek a judgment in the amount of the indebtedness plus interest, an award for punitive damages and relief from the stay pursuant to 11 U.S.C. § 362 (West 1979) in order to foreclose on their security interest in real property owned by the debtor. Upon consideration of the evidence presented at the hearing, exhibits, stipulations, briefs of the parties and the entire record, this court concludes that the plaintiffs should be granted a judgment of $30,000.00 plus interest and that such judgment should be declared nondischargeable. The court further concludes that no judgment should be awarded for attorney's fees or for punitive or exemplary damages. The plaintiffs' request for relief from the stay is moot and need not be addressed.

The following shall represent findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

The plaintiffs are a retired couple, currently residing in North Point, Florida. They have been married for more than 40 years and lived for many years in Ohio before moving to Florida for health reasons. Both Mr. Emrich and Mrs. Emrich have very limited formal education. Mr. Emrich has an eighth grade education and throughout his life has worked at various jobs, including bus driver, gardener and laborer. Mrs. Emrich is a high school graduate and has worked for many years as a retail store clerk. The plaintiffs presently live in a small, rented bungalow in North Point relying on funds earned by Mrs. Emrich as a domestic laborer and on Mr. Emrich's monthly social security check of less than $500.00.

The debtor, Francis Dale Samford, met the plaintiffs in his capacity as an employee of the Sword of the Lord Foundation (hereinafter referred to as the Foundation"). The Foundation is a long established, nonprofit, fundamentalist Christian evangelistic organization with headquarters in Murfreesboro, Tennessee. It apparently owns substantial real and personal property, has

a large staff and collects and disburses substantial funds for the furtherance of its purposes.

The debtor was first associated with the Foundation in 1970. He worked in various jobs and capacities before becoming the Stewardship Director. As Stewardship Director, a major part of his job responsibility was to solicit financial contributions for the Foundation. This duty included solicitation of outright gifts as well as testamentary provisions and trust agreements in which the Foundation would be named beneficiary. The debtor also solicited "investment" givers who would place cash sums with the Foundation on a guaranteed income basis. The Foundation would deposit or otherwise invest such funds, pay the "investor" the guaranteed return and utilize any additional earnings for the stated Foundation purposes.

The plaintiffs became familiar with the Foundation through a weekly newspaper published by the Foundation and distributed by cooperating church congregations. In early 1979, the plaintiffs became interested in moving to Sunset Square, a retirement community sponsored and advertised by the Foundation.

Sunset Square is located in Murfreesboro, Tennessee, and consists of an apartment-type residential complex where Christian retirees either purchased individual units or rented them on a lifetime basis. In 1979, Sunset Square was operated as a separate, non-profit organization closely aligned, supervised and controlled by the Foundation. Sunset Square eventually became a wholly owned subsidiary of the Foundation.

After making several inquiries concerning the Sunset Square project, the plaintiffs were contacted by the debtor in his capacity as Stewardship Director of the Foundation. After a series of correspondences with the debtor, the plaintiffs traveled from their home in Freemont, Ohio, to Murfreesboro in order to view the Sunset Square project first hand. The debtor met with the plaintiffs and gave them an extensive tour of both the Sunset Square project and the Foundation facilities. Following the inspection, the plaintiffs decided that Sunset Square did not meet their immediate needs; however, the plaintiffs liked Murfreesboro and expressed a desire to move to Murfreesboro for their retirement.

In early September, 1979, the plaintiffs sold their house in Freemont, Ohio, and moved to Murfreesboro. The debtor assisted the plaintiffs by arranging for them to temporarily rent a house in Murfreesboro owned by his son.

After moving to Murfreesboro, the plaintiffs contacted the debtor and expressed an interest in investing in the Sunset Square project. The plaintiffs had received approximately $35,000.00 from the sale of their Freemont residence and were eager to use these funds to assist the Foundation in performing its good works. The debtor informed the plaintiffs that although investments were no longer needed for the Sunset Square project, he had another program in which they could invest.

On October 9, 1979, the debtor appeared at the plaintiff's Murfreesboro residence and presented them with an agreement. In essence, it provided that Sunset Enterprises would receive $40,000.00 from the plaintiffs to hold and invest for a term of one year with the plaintiffs receiving interest on their investment at a rate of $8\frac{1}{2}\%$ per annum. The plaintiffs and the debtor on behalf of Sunset Enterprises executed this agreement. The $40,000.00 invested by the plaintiffs represented the total proceeds from the sale of their house and most of their accumulated savings.

When the plaintiffs invested in Sunset Enterprises, they assumed that they were investing either in a project sponsored by the Foundation, such as the Sunset Square project, or in a Foundation subsidiary. The plaintiffs had no idea that Sunset Enterprises was a small sole proprietorship owned by the debtor. The plaintiffs testified that had they known that Sunset Enterprises was not connected with the Foundation, they would never have given the debtor any money.

The plaintiffs gave money to the debtor relying upon the fact that they had dealt with him and known him solely and exclusively in his capacity as Stewardship Director for the Foundation. They believed that the debtor proposed the investment in Sunset Enterprises as an agent of the Foundation. Due to their faith in both the debtor and the Foundation, the plaintiffs made only rudimentary inquiries about Sunset Enterprises before investing their money.

A few weeks after they had invested in Sunset Enterprises, the plaintiffs discovered that they had not invested in a Foundation project. The plaintiffs confronted the debtor and demanded a return of their money. Although the debtor promised to repay the plaintiffs, he made no such payments until contacted by the plaintiffs' counsel. Finally, the debtor made a partial payment to the plaintiffs of $10,000.00 and executed a promissory note for the remainder of the debt. As security for the promissory note, the debtor executed a trust deed granting the plaintiffs a second security interest on a parcel of the debtors' land located in Rutherford County, Tennessee.

At trial, the debtor testified that he no longer possessed the plaintiffs' money and that no separate account of such money was ever maintained. He further testified that the funds were completely commingled with his personal funds, and that he could not identify any particular project, improvement or item for which said funds were expended.

On July 29, 1982, the debtor filed a voluntary Chapter 11 petition in this court. In July, 1983, the court appointed a liquidating trustee *nunc pro tunc* in order that the debtor's non-exempt property would be liquidated according to the plan. On July 22, 1983, the parcel of land in which plaintiffs held a second security interest was sold at auction. Subsequently, the court ordered a distribution to the plaintiffs from the proceeds obtained from the sale of this property in the amount of $1,922.87. Due to this liquidation and subsequent distribution, the plaintiffs' request for a relief from the stay has been mooted and need not be addressed by this court.

Upon review of the evidence presented, the court concludes that a judgment should be awarded to the plaintiffs and that this judgment should be declared nondischargeable. The plaintiffs objected to the dischargeability of this debt under both § 523(a)(2)(A) as obtaining money by a false representation or under § 523(a)(4) for fraud while acting in a fiduciary capacity.[1] Since this court finds the debt at issue nondischargeable pursuant to § 523(a)(2)(A), the court need not address the plaintiffs' contention that the debt is also nondischargeable under § 523(a)(4).

■■■ As this court has stated on several occasions, the creditor must prove the following criteria in order to have its debt excepted from discharge under § 523(a)(2)(A):

(a) That the debtor made the false representations;

(b) That at the time of making them, he knew that they were false;

(c) That he made them with the intention and purpose of deceiving the creditor;

(d) That the creditor relied on such representations; and

(e) That the creditor sustained the alleged loss and damages as a result of the representations having been made.

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; ...

(4) for fraud or defalcation while acting in a fiduciary capacity...."

---

1. 11 U.S.C. § 523(a)(2) and (4) (West 1979) provide as follows:

"(a) A discharge under section...1141...of this title does not discharge an individual debtor from any debt—

.    .    .    .    .

(2) for obtaining money, property, services, or an extension, renewal, or refinance [sic] of credit, by—

*Everwed Co. v. Ayers*, 25 B.R. 762, 772 (Bkrtcy.M.D.Tenn.1982). *See also Heinold Commodities & Securities, Inc. v. Hunt,* 30 B.R. 425, 435 (M.D.Tenn.1983). Furthermore, it is well established that silence or concealment of a material fact may constitute a materially false representation under § 523(a)(2)(A). *See, e.g., Community Hospital of Roanoke Valley, Inc. v. Musser,* 24 B.R. 913, 918 (W.D.Va.1982); *National Bank of North America v. Newmark,* 20 B.R. 842, 856 (Bkrtcy.E.D.N.Y. 1982); *Union Mortgage and Loan v. Fox,* 13 B.R. 827, 830 (Bkrtcy.W.D.Ky.1981); *H.C. Prange Co. v. Schnore,* 13 B.R. 249, 252–254 (Bkrtcy.W.D.Wis.1981); *Citizens & Southern National Bank v. Thomas,* 12 B.R. 765, 768 (Bkrtcy.N.D.Ga.1981); *Bank of Miami v. Quintana,* 4 B.R. 508, 510 (Bkrtcy.S.D.Fla.1980).

▮ The court finds that the plaintiffs have met their burden of proof in this case. The debtor's failure to explain that their $40,000.00 investment in Sunset Enterprises was not connected with and would not benefit the Foundation was of material importance. The debtor, through his prior conversations and association with the plaintiffs, knew or should have known, that the plaintiffs desired to use their funds to benefit and further the goals of the Foundation. The debtor nevertheless failed to tell the plaintiffs that Sunset Enterprises was not associated in any way with the Foundation, that Sunset Enterprises had no connection with the Sunset Square Retirement Home, that Sunset Enterprises was actually a sole proprietorship owned by the debtor and that the debtor in soliciting this investment was not acting within his capacities as Stewardship Director for the Foundation. Unaware of this information, the plaintiffs relied on the debtor's past position with the Foundation and on their prior association with the debtor in giving the debtor their $40,000.00 to invest in Sunset Enterprises. This court has no doubt that the debtor failed to inform the plaintiffs of this information with the express intent and purpose of deceiving the plaintiffs.

The debtor could not testify as to what he had used the $40,000.00 for other than the fact that he no longer possessed such sum. The court can only imply from this information that the debtor had the subjective intent to abscond with the funds entrusted to him by the plaintiffs. *See Heinold Commodities & Securities, Inc. v. Hunt,* 30 B.R. 425, 441–442 (Bkrtcy.M.D. Tenn.1983). As a result of the plaintiffs' reliance on the debtor's apparent relationship with the Foundation, the plaintiffs sustained the loss of $30,000.00. For these reasons, the court finds that the plaintiffs should be awarded a judgment for $30,-000.00 and that such judgment should be considered nondischargeable.

▮ The plaintiffs have also requested an award of punitive or exemplary damages against the debtor. The court is of the opinion that such damages should not be awarded as a part of the judgment. While this court is convinced that the debtor did deceive the plaintiffs and thereby obtained $40,000.00 from them, the court is of the opinion that the plaintiffs are at least somewhat culpable for their loss. The plaintiffs had an almost "blind faith" in the debtor and failed to ask even the most rudimentary questions concerning what he intended to do with their money. Even a cursory questioning of either the debtor or some other representative with the Foundation would have revealed the true state of affairs which the debtor successfully concealed from the plaintiffs. The court will therefore DENY the plaintiffs' request for punitive or exemplary damages.

The plaintiffs further request an award for attorney's fees and interest. When a debt is found to be nondischargeable under § 523(a)(2)(A), this court has held that damages shall be measured by the benefit-of-the-bargain rule. *Castner Knott Co. v. Wilson,* 12 B.R. 363, 370 (Bkrtcy.M.D. Tenn.1981). The court may also award prejudgment interest under TENN.CODE ANN. § 47–14–123 (1979) at the rate of 10% per annum. *Tennessee Asphalt Co. v. Purcell Enterprises, Inc.,* 631 S.W.2d 439 (Tenn.Ct.App.1982).

Since the contract entered into between the plaintiffs and the debtor on October 9, 1979, does not provide for an award of attorney's fees, this court will not award attorney's fees to the plaintiffs. *First American National Bank v. Crosslin*, 14 B.R. 656 (Bkrtcy.M.D.Tenn.1981); *First American National Bank v. Carter*, 14 B.R. 422 (Bkrtcy.M.D.Tenn.1981). The court will, however, award the plaintiffs' interest on their $30,000.00 judgment at the legal rate of 10% per annum from October 9, 1979, until the date of this judgment.

The court ORDERS the entry of a judgment for the plaintiffs against the debtor for $30,000.00 plus interest. The court further ORDERS that this judgment is nondischargeable pursuant to § 523(a)(2)(A).

IT IS, THEREFORE, SO ORDERED.