**In the matter of David Thurman GREIS, Debtor.**

**John DOUVITSAS, Plaintiff,**

**v.**

**David Thurman GREIS, Defendant.**

Bankruptcy No. 85–04170–3.
Adv. No. 86–0126–3.

United States Bankruptcy Court,
W.D. Missouri, W.D.

Dec. 1, 1986.
On Motion to Dismiss Dec. 19, 1986.
New Trial Denied Dec. 31, 1986.
Order Dismissing Appeal Feb. 5, 1987.

David T. Greis, Kansas City, Mo., pro se.

Larry C. Larson, Kansas City, Mo., for plaintiff.

MEMORANDUM OF FINDINGS OF FACT AND CONCLUSIONS OF LAW SUPPORTING DECREE OF NON-DISCHARGEABILITY OF DEFEND-ANT'S INDEBTEDNESS TO PLAIN-TIFF IN THE SUM OF $29,000 AND FINAL JUDGMENT THAT PLAIN-TIFF SHOULD HAVE AND RECOV-ER THE SAME SUM FROM DE-FENDANT

DENNIS J. STEWART, Chief Judge.

This is an action in which the plaintiff seeks a decree of nondischargeability in the sum of $30,000 which he states he committed to the custody of the defendant for the purpose of purchasing an interest in the Pegasus Bar, an interest which the defendant, allegedly without authorization, purchased in the name of his own corporation. Plaintiff brought this action under both § 523(a)(2) of the Bankruptcy Code (fraudulent misrepresentation) and § 523(a)(6) (wilful and malicious conversion). Trial of the merits was held on September 29, 1986. At the conclusion of the trial held on that date, because of defendant's contentions that plaintiff had not sufficiently complied with certain discovery demands, an adjourned hearing, at defendant's special request, was set for November 21, 1986, to determine the nature and extent of any failure to make discovery and any prejudice thereby worked to defendant and to grant defendant an opportunity to respond to any evidence of plaintiff adduced on September

29, 1986, which may have, at that time, surprised the defendant. Defendant, however, did not appear before the court on November 21, 1986, either personally or by counsel, nor did he request a continuance of the adjourned hearing set for that date, nor did he even apprise the court or the plaintiff or plaintiff's counsel of any absence of intention to appear. This court therefore considers any issue made by defendant respecting the plaintiff's failure to make discovery to be without merit.

### Findings of Fact

The credible evidence of record warrants the following findings of fact. In March of 1982, plaintiff retained the defendant, who was then an attorney in good standing with the bar of the State of Missouri, as his lawyer. Initially, the scope of authority granted by plaintiff to defendant was narrow, confined to the purpose of remaining a beneficiary from plaintiff's will. According to plaintiff's credible testimony, defendant never accomplished the desired beneficiary change. But, in September 1983, defendant contacted plaintiff concerning a bar then known as the Cabaret bar, later the aforesaid Pegasus Bar. He stated to plaintiff that a partner in the partnership owning the bar had died; that his widow was not interested in owning the bar; that plaintiff, accordingly, could purchase 50% ownership of the bar with $20,000 and an additional $10,000 for equipment and to pay off debts; that it was defendant's intention to operate the bar, retaining as his salary or share of profits 40% of the operating net revenues of the bar and giving 60% to plaintiff, as return on his investment. Plaintiff did not have the cash at his command with which to make the $30,000 investment. Defendant therefore arranged for plaintiff to mortgage certain of his real property in St. Louis in order to gain a $35,000 loan, $30,000 of which was to be used for the transaction involving the Pegasus Bar. The fund was placed in the control of the defendant, who then issued, over his signature, two checks to exhaust the $30,000 entirety of it—$20,000 for the purchase of 50% interest in the bar and $10,000 to pay off a loan on the equipment.

There is a divergence in the evidence respecting the nature and content of the agreement between plaintiff and defendant. According to the documentary evidence which was adduced in the course of trial, the parties executed a loan agreement whereby plaintiff loaned the $30,000 to defendant in sole consideration of his promise to repay it over 15 years at 13.5% per annum interest. Consequently, according to the defendant's contention, he treated the money as his own and made the purchase of 50% interest in the Pegasus Bar in the name of his own corporation, Braynes, Inc. As a result of this transaction, the plaintiff received no interest in the bar, and the evidence does not show that he consequently received any portion of any profits which may have been produced by any of its operations. But the defendant testified—without being contradicted in this particular—that he made some of the payments pursuant to the terms of the note, and that $29,000, approximately, is still owed on it. And the defendant protests that he intended to grant plaintiff a security interest in the bar, but that it was one of those things which he just never got around to doing.

The plaintiff, on the other hand, contends that he never understood the arrangement to be a straight loan agreement or a loan agreement at all; that the loan agreement in evidence was one which he signed at the instance of defendant while the first page of it was missing, so that it was not readily recognizable as a straight loan instrument, that he continued to obey defendant's instructions to execute any and all papers which were necessary to effect the ownership arrangement which defendant had promised to effect because defendant continued to be his lawyer and "I trusted David"; that defendant, throughout the process, continued to represent that he would effect 50% ownership of the bar and would pay him 60% of the profits; and that he had been made to believe that the arrangement would in fact be an ownership arrangement. Consequently, when defendant took bankruptcy, plaintiff was surprised to learn that he had no ownership in

the bar, but rather only a loan agreement with the defendant—who had in the meantime dissipated all the loan proceeds.

The court, given this conflict of testimony, elects to credit that of the plaintiff, which it finds to be the more credible. This finding is based not only on the appearance and demeanor of the respective parties, but also on the other contextual evidence which supports plaintiff's contention that the agreement or arrangement was represented to him to be one whereby he would purchase 50% of ownership of the bar. Thus, the plaintiff signed an agreement to permit defendant to manage the bar for him, but none which gave defendant the sole right to its profits or the right to sell the bar. And the defendant, as observed above, admits that he should have accorded the plaintiff an ownership interest in the bar, but failed to do so.

He insists, of course, that his failure to do so was inadvertent rather than intentional. But this protestation seems to this court wholly incredible when the effect of defendant's machinations was to give him complete and unfettered ownership and control of the bar wholly at the expense of plaintiff and without the expenditure of a dime by the defendant, according to the evidence. And all this was done even as defendant, as a lawyer serving the plaintiff in a fiduciary capacity, was duty-bound to be vigilant to protect his client's best interests. That he did not do so, but rather, subordinated them to his own personal interests, is a gross understatement. Indeed, the fact that the enterprise undertaken by the defendant was fraudulent and corrupt from the outset is evidenced by the fact that, as a fiduciary, defendant should never have had intention to take the loan from the plaintiff, much less actually convert the plaintiff's monies to his own use and benefit. It is unseemly, to say the least, for a lawyer to use a client's monies for his own profit, even when the client retains some use and control of those monies. But, in this action, the evidence clear-ly and convincingly shows that the defendant arrogated plaintiff's monies to his *exclusive* benefit and profit.

### Conclusions of Law

■ Section 523(a)(2) of the Bankruptcy Code provides for nondischargeability of liabilities demonstrated by clear and convincing evidence to have been created by a debtor's fraudulent misrepresentation. In order to obtain a decree of nondischargeability under this section, it is said that the creditor must show that the debtor made a material misrepresentation which the creditor reasonably relied upon in extending the credit and which misrepresentation was intentionally made and known to be false at the time it was made. *Sweet v. Ritter Finance Co.*, 263 F.Supp. 540, 543 (W.D. Va.1967). Under these rules, it is said that, while mere breach of contract is not fraud, a debtor's misrepresentation of his intention to induce the entering-into of a contract qualifies as a misrepresentation of fact within the meaning of § 523(a)(2), *supra*.[1] And, in this action, according to the foregoing findings, defendant materially and knowingly misrepresented his intention to confer an ownership interest in the bar upon the plaintiff. Defendant's testimonial protests that he intended to do so, and simply failed to carry out his intention, are simply incredible in view of his "failures" contributing to his own wealth and well being. He insinuated himself into the confidence of plaintiff and used his fiduciary status of being plaintiff's counsel to his own benefit and his client's detriment. The fact of the defendant's fiduciary status may be considered as material by this court. "The fact that one in whom confidence is reposed by another obtains an apparent advantage over the latter in a transaction between them is a vital factor in raising the presumption of fraud on the part of a fiduciary or one in a confidential relationship. Moreover, the unfairness of a transaction ... is in itself a factor from

---

1. "A mere promise to be executed in the future is not sufficient to make a debt non-dischargeable even though there is no excuse for the subsequent breach. A misrepresentation by the bank-rupt of his intention, however, may constitute a false representation within exception." 1A Collier on Bankruptcy ¶ 17.16, pp. 1638–39 (14th ed. 1978).

which fraud can be inferred; and such inference will operate along with other evidence to support a finding of fraud." 37 Am.Jur.2d *Fraud and Deceit* § 440, p. 601 (2d ed. 1968). Because of the confidence reposed in defendant, plaintiff believed the transaction to be one of the purchase of an ownership interest, because of defendant's representations to that effect, even though the documents which defendant placed before him for signature may not have been to that effect. And the unfairness of the advantage which defendant thereby obtained for himself is all too readily apparent. This is not a case of simple failure of the defendant to carry out an agreement; rather, the evidence demonstrates an intentional scheme to arrogate plaintiff's wealth to the defendant's sole enjoyment. The facts in evidence clearly show that the current liability of $29,000—defendant's testimony as to a balance due in this amount is uncontradicted—constitutes one created by fraud for which the decree of nondischargeability must issue.

■ Plaintiff also seeks an award of punitive damages in the considerable sum of $300,000 to punish the intentional conduct of the defendant. This court must agree, on the basis of the foregoing findings of fact and conclusions of law, that the conduct of defendant has been reprehensible. But the imposition of punitive damages in this action would be superfluous, when, under the circumstances of his apparent inability to pay, the defendant is sufficiently punished by an award of actual damages. According to the governing legal authority, punitive damages are inappropriate when the defendant is punished in suitable measure by the award of actual damages.[2] This court therefore declines to make any award of punitive damages.

For the foregoing reasons, this court will issue its final decree and judgment of even date herewith, declaring defendant's indebtedness to plaintiff in the sum of $29,-000 to be nondischargeable in bankruptcy and granting plaintiff judgment for the same sum against defendant.

## ORDER DENYING DEFENDANT'S "ALTERNATIVE MOTION TO DISMISS FOR LACK OF JURISDICTION AND FOR PLAINTIFF'S LACK OF STANDING TO SUE"

Formerly, on December 1, 1986, this court issued its final judgment in this action for plaintiff in the sum of $29,000 and its decree declaring the same judgment to be nondischargeable in bankruptcy. Within 10 days of that judgment, the defendant has filed a motion to alter or amend judgment or for new trial, on which the court has set a hearing. Also, the defendant has filed an "alternative motion to dismiss for lack of jurisdiction and for plaintiff's lack of standing to sue." In that motion, the defendant contends (1) that John Douvitsas is an improper party because the documentary evidence in the trial of this action demonstrated that "(t)he John Douvitsas Trust ... is an entity which owns real estate in the City of St. Louis; which borrowed money from Chippewa Bank using that real estate as collatera; which for at least the period from 30 September 1983 through 30 April 1985 maintained a checking account at Chippewa Bank in St. Louis ... (and) (t)he loan agreement for $30,000 which has been at issue in this case is a loan agreement between Defendant and the John Douvitsas Trust"; and (2) that "(t)he John Douvitsas Trust failed to make timely objection to the discharge of the debt. There being no such timely objection, it is suggested that this Court is without subject-matter jurisdiction."

■ Both of the contentions turn on the issue of whether the individual John Douvitsas was a proper party plaintiff when the evidence in the case at bar—or some of it—tends to show that the money paid to the plaintiff came from the John Douvitsas trust. Even, however, if it is true that the John Douvitsas trust is the beneficial owner of the chose in action which provided the

---

**2.** Punitive damages "should not be awarded in a case where the amount of compensatory damages is adequate to punish the defendant." 22 Am.Jur.2d *Damages* § 264, p. 359. See also *Matter of Kratzer*, 9 B.R. 235, 239, 240 (Bkrtcy. W.D.Mo.1981) and cases there cited.

basis for the within lawsuit, the evidence also shows that John Douvitsas was the trustee for that trust. Under such circumstances, Rule 17(a) of the Federal Rules of Civil Procedure provides that "(a)n executor, administrator, guardian, bailee, *trustee of an express trust ... may sue in his own name without joining with him the party for whose benefit the action is brought.*" (Emphasis added.) This court therefore concludes that the plaintiff was a proper party plaintiff and that the "alternative motion to dismiss for lack of jurisdiction and for plaintiff's lack of standing to sue" must accordingly be denied. It is therefore

ORDERED that the defendant's "alternative motion to dismiss for lack of jurisdiction and for plaintiff's lack of standing to sue" be, and it is hereby, denied.

## MEMORANDUM SUPPORTING ORDER DENYING DEFENDANT'S MOTION FOR NEW TRIAL

■ After a plenary evidentiary hearing, this court, on December 1, 1986, issued its final judgment to the effect that plaintiff have and recover from defendant the sum of $29,000 plus appropriate interest and a final decree to the effect that the same indebtedness is nondischargeable in bankruptcy. On December 11, 1986, the defendant filed a "motion for new trial, or in the alternative, to re-set the hearing previously scheduled for 21 November 1986." The principal assertions made in that motion were that, in the course of pretrial proceedings concerning discovery, this court issued an order precluding the plaintiff from offering testimony respecting his conversations with defendant as to which requested pretrial discovery had not been forthcoming [1]; that, in the course of the subsequent trial of the merits, the court "reversed itself" and permitted plaintiff to testify concerning his agreements with the defendant [2]; that the court, in so doing, attempted to relieve any possible prejudice to the defendant by providing for the holding of an adjourned hearing at which the defendant might offer evidence to counter any evidence which had "surprised" defendant [3]; that the adjourned hearing was set by the court's order of October 8, 1986, for November 21, 1986; that defendant's former counsel received a copy of that order but the defendant did not; that neither the defendant nor his counsel appeared for the hearing of November 21, 1986, and consequently no evidence was presented in defendant's behalf at the hearing; that, consequently, this court issued its abovementioned final judgment for plaintiff on December 1, 1986; and, according to defendant's contentions, he did not learn of the setting of the hearing of November 21, 1986, until he received a copy of the judgment of December 1, 1986.

---

1. The defendant, on September 23, 1986, six days before the trial date of Septmber 29, 1986, moved for continuance on the ground that plaintiff had not yet answered interrogatories propounded to him on July 31, 1986. The defendant had not previously filed with the court any motion to compel discovery, despite the long period of time which had allegedly passed without responses. This was so although it was necessary for the court previously to continue the hearing of the merits set for September 4, 1986, on the ground that the same interrogatories had not yet been answered. The court therefore, on September 25, 1986, entered its order to the following effect:

   "The motion for continuance is denied. It is open to defendant to seek sanctions precluding proof on *undiscovered items,* at the trial hereof, *on an appropriate showing.*" (Emphasis added.)

   Subsequently, in the course of the trial of September 29, 1986, defendant complained that plaintiff was being permitted to testify with respect to "conversations" which he had had with defendant despite his having failed to answer interrogatories inquiring generally into plaintiff's contentions respecting the content of those conversations. In all material respects, however, plaintiff's factual contentions had been completely communicated in the complaint at bar in which the material factual representations alleged to have been made by defendant were described at some length. The court therefore permitted the plaintiff's testimony in these material respects, but, as a matter of grace, granted defendant the opportunity for an adjourned hearing to offer any relevant contradicting evidence.

2. Under the facts which have been set out in note 1, *supra,* it seems inappropriate to state that the court "reversed itself" on the discovery issue.

3. See notes 1 and 2, *supra.*

At the defendant's explicit request, a hearing on his motion for new trial was held on December 30, 1986. The defendant then appeared personally and as his own counsel and plaintiff appeared by counsel, Larry Larson, Esquire. The defendant testified in support of his motion for new trial. He stated under oath that he did not receive the order of October 8, 1986, setting the adjourned hearing of November 21, 1986, although the court records purport to show that he was sent a copy of the order; that, although his counsel timely received a copy of the order, he failed to notify defendant of the hearing; that it was (and remains) the defendant's intention to adduce evidence to counter plaintiff's testimony respecting the "conversations" between plaintiff and defendant; and that, otherwise, he adopted in his testimony the factual assertions contained in his motion for new trial. As pertinent to the considerations before the court, the defendant states that he would have offered the following evidence in the hearing of November 21, 1986, had he been timely notified of it: (1) His own testimony, "as well as that of a witness," to the effect that plaintiff, through his manner of dress and grooming, effected an "unsophisticated" appearance and demeanor in the trial of the merits of September 29, 1986; (2) Testimony and documentation to counter plaintiff's testimony that defendant had drawn up a "living trust" for him in a manner which did not accord with his instructions and that the "living trust" had only recently been shown to plaintiff; (3) testimony to counter plaintiff's testimony that documents signed by him were either signed in blank or were altered; (4) "Defendant intended to unequivocally demonstrate at the adjourned hearing, through the evidence outlined above, and through other evidence, that Plaintiff, far from being a credible witness, repeatedly lied to the Court."

It is to be remembered that the basis on which the defendant was granted an additional evidentiary opportunity was to grant him an opportunity to offer evidence of "conversations" with plaintiff as to which he had not been granted pretrial discovery of plaintiffs contentions as to the contents of those conversations.[4] The court could not and did not rule that the defendant was entitled to an adjourned hearing on issues which had previously been the subject of adequate discovery or on any other issues except those on which plaintiff had failed to grant requested pretrial discovery of his factual contentions respecting his conversations with defendant.[5] And, in this regard, the judgment of the court of December 1, 1986, clearly stands upon material facts which had been the subject of adequate discovery prior to trial and as to which defendant fully and without restriction testified in the course of the trial of the merits of September 29, 1986. Defendant does not deny taking the $30,000 from plaintiff and purchasing for himself an interest in the Pegasus Bar. And, of these material facts, insofar as they may have involved conversations between plaintiff and defendant, there was sufficient pretrial exposure of plaintiff's factual contentions in the complaint itself.[6] The same is true of the species of misrepresentation alleged—that defendant promised to purchase the half interest in the partnership which owned the bar in plaintiff's name and for his benefit.[7] Clearly, there was no failure to grant adequate pretrial discovery on this critical issue.[8] And the defendant, as observed above, fully offered evidence on these critical issues. At the conclusion of the trial of the merits of September 29, 1986, the court's offer of an adjourned evidentiary opportunity was to resolve any possible doubt that defendant had had a reasonable and fair opportunity to adduce evidence on the material factual issues.

The offers of proof which he now makes, however, clearly demonstrate that he does not propose to offer evidence on any truly material issue. His offers to impeach the

---

4.  See note 1, *supra.*

5.  See notes 1 and 2, *supra.*

6.  See numbered paragraphs 5 through 13 of the plaintiff's complaint filed March 31, 1986.

7.  See paragraphs 6 and 7 of the complaint.

8.  And see note 1, *supra.*

credibility of the plaintiff do not come within any recognized form of impeachment evidence.[9] His offers to show that he prepared the "living trust" in accordance with plaintiff's instructions and presented it to him timely are simply irrelevent. Plaintiff was permitted to testify on these facts only as they bore on the existence *vel non* of defendant's fiduciary relationship to plaintiff. The court drew no inferences from any incidental testimony that the "living trust" was incorrectly drafted or untimely presented. And finally, it is obvious from the court's findings and conclusions of December 1, 1986, that plaintiff's testimony as to the incomplete condition of the loan agreement could be completely ignored and there would still be a sufficient factual basis for the court's finding that the agreement was that defendant would purchase half interest in the bar for defendant rather than a straight loan agreement. For, as the court observed in the findings and conclusions underlying the judgment, the defendant admitted in his own testimony that the loan agreement was intended to be supplemented by a security interest in the bar which he did not accord to plaintiff. This admission that ownership was included in the agreement led the court to conclude that plaintiff's statements that he believed that plaintiff promised him the half interest were credible. And, furthermore, if the agreement was complete when it was given to plaintiff to sign, it should be defendant who had personal knowledge of this fact, and he had a complete and unfettered opportunity to testify on this issue in the trial of the merits of September 29, 1986. Accordingly, no prejudice to plaintiff has been or can be shown in this regard.

In conclusion, the hearing of December 31, 1986, and the testimony of defendant then rendered showed the substance of his grounds for a new trial to be meritless.

Further, the evidence clearly shows that defendant had timely notice of the hearing of November 21, 1986. For one thing, timely service of the notice of the hearing on plaintiff's counsel is legally tantamount to service on defendant.[10] Secondly, the court records show that he was sent a copy of the notice. This court does not find defendant's protestations that he did not receive timely notice of the hearing of November 21, 1986, to be credible.

Therefore, it is hereby

ORDERED that defendant's motion for new trial be, and it is hereby, DENIED.

## ORDER DISMISSING APPEAL

■ Formerly, on December 1, 1986, this court issued its final decree and judgment to the effect that defendant's indebtedness to plaintiff in the sum of $29,000 be declared nondischargeable in bankruptcy and that plaintiff have and recover the same sum from defendant. Thereafter, the defendant moved to alter or amend judgment or for new trial. On January 20, 1987, this court issued its order denying that motion.

Thirteen days later on February 2, 1987, the defendant filed his notice of appeal from the judgment. That filing was untimely. "A party who appeals from bankruptcy court to district court must file a notice of appeal with the bankruptcy court within 10 days of the entry of the order or judgment appealed from." *Matter of Ramsey*, 612 F.2d 1220, 1222 (9th Cir.1980). Timely filing of the notice of appeal is

---

**9.** It is true that the testimony of a witness may be impeached by "proof by other witnesses that *material* facts are otherwise than as testified to by the witness under attack," *McCormick on Evidence* § 33, p. 66 (2d ed. 1972) (emphasis added), but defendant's offers are not on *material* facts. Even if they were, he has had full and fair prior opportunities to adduce evidence on the *material* facts.

**10.** Service upon the debtor in a bankruptcy proceeding may be effected, "after a petition has been filed by … the debtor and until the case is dismissed or closed, by mailing copies of the

summons and complaint to the debtor at the address shown in the petition or statement of affairs or to such other address as the debtor may designate in writing filed with the court and, if the debtor is represented by an attorney, to the attorney at his post-office address." Rule 7004(b)(9) of the Bankruptcy Rules. With respect to orders of the court, service is effected by service "upon the attorney." Rule 5(b), F.R. Civ.P., and Rule 7005 of the Bankruptcy Rules. The records in this case show that such service was timely made of the order setting the adjourned hearing of November 21, 1986.

necessary to confer jurisdiction on the district court sitting as an appellate court. "An untimely notice deprives the district court of jurisdiction to review the bankruptcy court's order or judgment." *Id.*, at 1222 and cases there cited.

On October 30, 1986, our district court issued its General Order to the effect that:

"the judges of the Bankruptcy Court of the Western District of Missouri may hereafter dismiss appeals from decisions of the Bankruptcy Court filed in this court for failure of any of the parties thereto to perfect an appeal by not filing appropriate documents with the Clerk of the Court as provided in the Bankruptcy Rules or Sections of Title 28, U.S.C.A."

Under the authority granted by that rule, the appeal should be dismissed for failure of defendant to file a timely notice of appeal as required by Rule 8002 of the Bankruptcy Rules: "The notice of appeal *shall* be filed with the clerk of the bankruptcy court within 10 days of the date of entry of the judgment, order or decree." (Emphasis added.)

It is therefore, hereby

ORDERED that defendant's appeal from the court's decree and judgment of December 1, 1986, be, and it is hereby, dismissed.