**In re Paul WARD.**

**William McHENRY, John Wiersma, Thomas Brennan, and David Knapp, Appellants,**

v.

**Paul WARD, Appellee.**

**Bankruptcy No. SG84–01934. No. G89–40621CA.**

United States District Court, W.D. Michigan, S.D.

March 27, 1990.

William F. McNally, Kevin B. Even, Culver, Lague & McNally, Muskegon, Mich., for appellants.

David L. Conklin, David L. Conklin, P.C., Richard M. Van Orden, Richard M. Van Orden, P.C., Grand Rapids, Mich., for appellee.

## OPINION

ENSLEN, District Judge.

This case is currently before the Court on appeal from the bankruptcy court. Appellants charge that the bankruptcy court erred in its June 7, 1989 Opinion and Order which discharged appellee's $60,000 debt to appellants McHenry, Wiersma, Brennan, and Knapp. Appellants are four individuals who brought an earlier lawsuit against appellee Ward and two others in federal court for fraud in connection with the purchase of stock. Appellants in that action had a $60,000 judgment entered in their favor.

## DISCUSSION

### Standard of Review

Bankruptcy Rule 8001 provides that an appeal as of right may be taken from a final judgment, order, or decree of a bankruptcy judge to the district court. On appeal a district court may affirm, modify or reverse the bankruptcy court's judgment, order, or decree. It may also remand the case with instructions for further proceedings. The bankruptcy court's findings of fact will not be set aside unless clearly erroneous. Bankruptcy Rule 8013. Conclusions of law, or mixed questions of

law and fact, are reviewed under a *de novo* standard. *See, e.g., In re Fasano–Harriss Pie Co.*, 71 B.R. 287, 290 (Bankr.W.D.Mich. 1987). Finally, it has been said that a district court may consider any issue presented by the record even if the issue was not presented to the bankruptcy court. *Matter of Pizza of Hawaii, Inc.*, 761 F.2d 1374, 1379 (9th Cir.1985).

*Background*

On June 7, 1984, the Honorable Douglas W. Hillman granted judgment in favor of plaintiffs William Henry, John Wiersma, David Knapp and Tom Brennan ("appellants"), against defendants Paul Ward ("appellee"), Ronald Horlings, and Elva Horlings, jointly and severally.

An attempt was made by appellee to appeal the judgment, however, his attempt was abandoned. The original lawsuit was brought by appellants in connection with their purchase of stock in a corporation formed by Ronald Horlings and appellee, Kentwood Quality Services, Inc. ("Kentwood"). Appellants' investments in Kentwood were immediately diluted as a result of an instantaneous transfer of its corporate assets into a second corporation named Quality Conversions, Inc. ("Quality") which Horlings and appellee controlled by their fifty-eight percent (58%) ownership interest. Appellants were left with a minority control of a holding corporation with no tangible assets. The gist of appellants' complaint was for fraud in connection with their purchase of stock; however, a number of counts were alleged under both federal and state law.

Count I of appellants' complaint alleged violations of Sections 12(1), 12(2) and 17(a) of the Federal Securities Act of 1933. 15 U.S.C. § 77q, § 77*l*. Count II alleged violations of Section 10b of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and Rule 10b–5 of the Rules and Regulations of the Securities and Exchange Commission. 17 C.F.R. 240.10b–5. Count III alleged violations of the Michigan Uniform Securities Act. M.S.A. §§ 19.776(101), 19.776(301) [M.C.L.A. §§ 451.501, 451.701]. Count IV alleged common law fraud. Count V al-

leged breach of fiduciary duties of the defendants, including appellee, as directors and officers of the corporation. Count VI sought dissolution of the corporation pursuant to Section 825 of the Michigan Business Corporation Act. Finally, Count VII alleged negligence by defendants, including appellee, with respect to the appellants' purchase of stock.

The Honorable Douglas W. Hillman entered judgment in favor of appellants as follows:

| | |
|---|---|
| William Henry | $25,000.00 |
| John Wiersma | $25,000.00 |
| Tom Brennan | $ 5,000.00 |
| David Knapp | $ 5,000.00 |

The court imposed liability by finding that the defendants, including appellee, had violated Section 12(2) of the 1933 Securities Act as alleged in Count I of appellants' complaint. The court additionally ruled that defendants, including appellee, were liable for violations of Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b–5 promulgated under the Act, as alleged in Count II.

Thereafter, the appellee filed his petition in the Bankruptcy Court on August 23, 1984, seeking relief under Chapter 7 of the Bankruptcy Code, including relief, by way of discharge, from the judgment entered against appellee by Judge Hillman. Pursuant to appellee's petition an automatic stay was ordered on August 23, 1984.

Appellants objected to the discharge of this judgment and accordingly filed their complaint on or about October 12, 1984 to determine the dischargeability of the debt. It was appellants' position that the debt was not dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) since the debt arose from appellee's obtaining money or property by false pretenses, false representation, or actual fraud.

Appellants subsequently filed their motion for summary judgment pursuant to Fed.R.Civ.P. 56 on the ground that there was no genuine issue of material fact, and that appellants were entitled to judgment as a matter of law that the debt was not dischargeable in bankruptcy. The gist of appellants' motion was that the judgment

entered by Judge Hillman collaterally estopped appellee from relitigating the same issue already decided by the district court.

Appellee Ward argued in response that collateral estoppel did not apply for the reason that the fraud issue considered in the district court was not the same "precise" issue on fraud to be decided by the Bankruptcy Court. Further, appellee argued that his affirmative defense of failure to mitigate damages represented a genuine issue of material fact.

On September 3, 1985, the Honorable Marvin L. Heitman, of the bankruptcy court, entered his order granting summary judgment for appellants and denying the dischargeability of the debt.

The court ruled that:

The Federal District Court's burden of proof for a cause of action for fraud and deceit are identical, or nearly so, to the requisite burden under Section 523(a)(2)(A) of the Bankruptcy Code.... I conclude that Judge Hillman found and necessarily decided all of the elements of active fraud under Count II of plaintiffs' complaint in the District Court, which would have to be proven in the Bankruptcy Court to establish the plaintiffs' right to have the debt determined nondischargeable under Section 523(a)(2) of the Code.

Thereafter, appellee Ward appealed Judge Heitman's decision to the United States District Court for the Western District of Michigan. This appeal dealt only with the issue of collateral estoppel and whether Judge Heitman had an adequate record in order to rule as he did.

On January 27, 1988, the Honorable Benjamin Gibson ordered the case remanded to bankruptcy court for further proceedings not inconsistent with his opinion on the issue of fraud under Section 523(a)(2)(A) of the Bankruptcy Code. The court found that since fraud was not originally litigated under a clear and convincing standard, collateral estoppel was not appropriate.

The case was then tried in the bankruptcy court before the Honorable Jo Ann C. Stevenson for a determination of whether the acts or omissions committed by the appellee Ward constitutes fraud under Section 523(a)(2)(A) and 523(a)(4) of the Bankruptcy Code. Judge Stevenson's Order and Opinion of June 7, 1989 discharged appellee's Sixty Thousand Dollars ($60,000) debt.

*Discharge of Debt*

In a personal bankruptcy case, the issue of barring discharge of a debt is controlled by 11 U.S.C. § 523. That section provides that certain classes of debts may not be discharged, including tax debt, alimony, educational loans, and relevant to the case before me, a debt for money obtained fraudulently. Section 523(a)(2)(A) reads in relevant part:

**§ 523 Exceptions to discharge**

(a) A discharge under Section 727, 1141, 1228(a), 1228(b), or 1338(b) of this title does not discharge an individual debtor from any debt—...

(2) for money, property, services, or an extension, renewal, or refinancing of credit to the extent obtained by—...

(A) False pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition....

The party seeking an exception from discharge of a debt under § 523(a)(2)(A) bears the burden of proof by clear and convincing evidence. *In re Martin*, 761 F.2d 1163, 1165 (6th Cir.1985). When deciding whether a debt should be discharged under § 523(a)(2)(A), the standards applied should be construed in the light of the congressional objective that the debtor should be given a "new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *Lines v. Frederick*, 400 U.S. 18, 19, 91 S.Ct. 113, 113–14, 27 L.Ed.2d 124 (1970) (quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 244–45, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1933). Exceptions to dischargeability are to be construed strictly. *Gleason v. Thaw*, 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915); *In re Ward*, 857 F.2d 1082, 1083 (6th Cir. 1988). The Sixth Circuit has also noted that § 523 should be interpreted in a manner consonant with equity and Congress's

intent that "the *honest* citizen may be relieved from the burden of hopeless insolvency." *In re Phillips,* 804 F.2d 930 (6th Cir.1986).

■ To sustain an objection to the discharge of a debt under § 523(a)(2)(A), each plaintiff is obliged to show the following:

1. The debtor made a materially false representation;

2. The debtor knew the representation was false or made the representation with gross recklessness as to its truth at the time he made it;

3. The representation was made with the intent and purpose of deceiving the creditor;

4. The creditor reasonably relied upon the debtor's materially false representation; and

5. The creditor sustained loss and damages as a proximate result of the materially false representation by the debtor.

*See, e.g., In re Phillips,* 804 F.2d 930, 932 (6th Cir.1986); *In re Black,* 787 F.2d 503, 506 (10th Cir.1986); *In re Slutzky,* 22 B.R. 270, 270–71 (Bankr.E.D.Mich.1982).

Appellants allege six areas of error in this appeal. The Court will address each in the order presented to it.

### 1. Judge Hillman's Findings of Fact

■ According to appellants in this matter, Judge Hillman's detailed findings of fact in the district court action establish by clear and convincing evidence that the debt is nondischargeable under § 523(a)(2)(A) of the Act. In an odd procedural tact, appellants have attempted to reargue in this Court the collateral estoppel issue already reviewed and decided by Judge Gibson.[1] Appellants argue that it was error by the bankruptcy court not to admit Judge Hillman's findings of fact regarding the issue of fraud. Yet appellants ignore the fact that they bring their appeal to this Court under Bankruptcy Rule 8001. Rule 8001 clearly applies to an appeal from a *"final* judgment, order, or decree of a *bankruptcy judge* to a district court or bankruptcy appellate panel." Bankr.R. 8001. The collateral estoppel issue is acknowledged to be interlocutory and is, of course, not issued by a bankruptcy judge. The rules of procedure in bankruptcy under Part VIII apply only to appeals to the district court or to the bankruptcy appellate panels. Subsequent appeals to the courts of appeal are governed by the Federal Rules of Appellate Procedure.

### 2. "Property" under Section 523(a)(2)(A)

■ On this issue, appellants argue that appellee Ward's receipt of 100,000 shares of stock in Quality Corporation and two employment contracts do constitute a benefit, thus the bankruptcy court improperly granted discharge. The lower court ruled that discharge was not properly granted because Ward did not receive a benefit. Opinion, Appellant's Exhibit 3, at 23 (June 7, 1989).[2] In support of this conclusion, the bankruptcy court wrote:

> The testimony here proved that the only money, property or service Ward (appellee) received was money paid to him under the employment contracts provided for in the Subscribers and Shareholders Agreement. There were no allegations that Ward did not perform the work required by those Contracts.

> Of course, Ward did obtain one hundred thousand (100,000) shares of Quality

---

**1.** In his opinion of January 27, 1988, Judge Gibson, addressed the collateral estoppel issue presented to him upon appeal of the bankruptcy court's grant of summary judgment. In that opinion, Judge Gibson wrote:

> Because the standard of scienter under Rule 10b–5 and Section 523(a)(2)(A) may be somewhat different, and because the standard of proof between the two actions are significantly different as are the policy concerns, the Court finds collateral estoppel to be inappropriate in this case. According, this case is remanded to the bankruptcy court for further

proceedings on the issue of fraud under Section 5213 [523](a)(2)(A) of the Bankruptcy Code.

**2.** The issue of whether the debtor is required to receive a benefit has been decided differently by various courts. *See* Part 3 of this opinion (discussing different lines of case law on this issue). The bankruptcy court adopted the reasoning of *In re Wade,* 43 B.R. 976 (Bankr.Colo.1984), concluding that the debtor must actually receive a benefit.

stock. The plaintiffs (appellants) did not allege, however, that the one hundred thousand (100,000) shares of Quality stock constituted some or all of their Sixty Thousand Dollars ($60,000) paid by the investors was related in any way to Ward's one hundred thousand (100,000) shares of Quality stock. Nor was there any evidence as to the worth of the one hundred thousand (100,000) shares. The only evidence as to the Sixty Thousand Dollars ($60,000) was that it was given to Horlings. Further, there was no testimony that Ward benefited in any way from the Sixty Thousand Dollars $60,000) investment.

*Id.* at 22–23.

The issue of whether Ward received a benefit under § 523(a)(2)(A) is a mixed question of fact and law. Appellants make much of the fact that appellee received 100,000 shares of Quality stock for no consideration, arguing that appellee was then entitled as an equity owner to share in all assets misappropriated to Quality. In addition, appellants contend that appellee had all the ordinary benefits of stock ownership, including the right to dividends, and the right to vote. Yet this argument ignores the fact that the shares at issue were essentially valueless. Moreover, the bankruptcy court focused on the $60,000 investment and appellants failure at trial to show that appellee Ward received any part of it. The $60,000 here was the logical place to look for a benefit, and viewing voting rights in Quality stock as a benefit simply is not persuasive. Moreover, it is clear that the lower court considered the employment contracts as less of a benefit, because there was no evidence that Ward received payment for the work under the contract without actually performing it. I find no error in the lower court's determination that a benefit to Ward was not demonstrated by clear and convincing evidence. The court's reasoning was sound, for as appellants have characterized benefit, it is a very small benefit indeed, and sounds more than a bit contrived.

### 3. Necessity of "Benefit" Requirement

■ Whether a benefit to the debtor is required in order to block discharge under 11 U.S.C. § 523(a)(2)(A) is a question of law not specifically decided in this Circuit. The case law is in conflict. *Compare Federal Savings and Loan Ins. Co. v. Musacchio,* 695 F.Supp. 1053 (N.D.Cal.1988) (not required); *In re Kunkle,* 40 F.2d 563 (E.D. Mich.1930) (not required); *In re Sobel,* 37 B.R. 780 (Bankr.E.D.N.Y.1984) (not required); *In re Pirnie,* 16 B.R. 65 (Bankr.D. Mass.1981) (not required); *In re Tom Woods Used Cars,* 23 B.R. 563 (Bankr.E.D. Tenn.1982) (not required) *with In re Wade,* 43 B.R. 976 (Bankr.D.Colo.1984) (required); *In re Winfree,* 34 B.R. 879 (Bankr.M.D. Tenn.1983) (required). There are, in addition, a number of cases which follow the dicta enunciated in *Rudstrom v. Sheridan,* 122 Minn. 262, 263, 142 N.W. 313, 314 (1913) which stated that "the purpose of the law was to prevent the bankrupt from retaining the benefits of property acquired by fraudulent means. In order, therefore, to bring the statute into operation, and prevent the full discharge of the bankrupt, it should be made to appear that property of some kind, tangible or intangible, was thus obtained by [the debtor]." *See In re Wade,* 43 B.R. at 981 (discussion of case law that follows theory of *Rudstrom* ).

I believe that the most extensive treatment of this issue can be found in the case *In re Wade.* I also find its reasoning to be the most persuasive, thus, I cannot find error in the bankruptcy court's requirement of proof of benefit to the debtor. On this issue, as in general, the court must narrowly construe exceptions to discharge against the creditor and in favor of the debtor. *Gleason v. Thaw,* 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915). Moreover, the long-standing receipt of benefits theory "could well have been altered by Congress when it enacted the present Bankruptcy Code, but it chose *not* to do so." *In re Wade,* 43 B.R. at 982. (emphasis in original).

### 4. Legal Duty of Appellee Ward

In a lengthy, rather convoluted presentation of this issue, appellants argue that some fiduciary duty owed to them by appel-

lee Ward should be the basis for preventing discharge of the relevant debts. As appellee points out, appellant seem to be deriving a legal duty from some combination of Ward's capacity as attorney, incorporator, corporate officer and director, and seller of securities. Also, appellants do not precisely state, but seem to argue, that the breach of fiduciary duty or duties is relevant to § 523(a)(2). *See, e.g.,* Appellants' Brief, at 28 (July 26, 1989) ("*In re Greis* illustrates the proper treatment of a debtor seeking discharge under § 523(a)(2) who was in a fiduciary relationship with the creditor."). *In re Greis,* of course, only explicitly addressed the issue of whether a debtor's misrepresentation of his interest to induce the entering-into of a contract qualifies as a misrepresentation under § 523(a)(2). 73 B.R. 197, 200 (Bankr.W.D. Mo.1986). In the case before me, the bankruptcy court found that appellee Ward's nondisclosure of the stock dilution plan was a material misrepresentation. Opinion, Appellants' Exhibit 2, at 24 (June 7, 1989). Thus, I do not find *In re Greis* to be particularly enlightening here.

### 5. Reliance by Appellants

Appellants also ask this Court to assign error based on the bankruptcy court's conclusions about appellants' reliance under § 523(a)(2)(B). According to appellants, the lower court's opinion "seems to treat this case which involved willful nondisclosure as one involving an affirmative misrepresentation of fact." Appellants' Brief, at 32. Appellants go on to say that the bankruptcy court "incorrectly looked to see whether appellants relied on any affirmative misrepresentation of fact" instead of looking at whether they relied upon the circumstances they were led to believe as a result of appellee Ward's nondisclosure. *Id.* at 33.

■ Appellants correctly state that material omissions can form the basis of misrepresentation under § 523(a)(2)(A). *See In re Van Horne,* 823 F.2d 1285 (8th Cir.

1987); *In re Phillips,* 804 F.2d 930 (6th Cir.1986); *In re Weinstein,* 31 B.R. 804 (Bankr.E.D.N.Y.1983); *In re Maier,* 38 B.R. 231 (Bankr.D.Minn.1984); *In re Samford,* 39 B.R. 423 (Bankr.M.D.Tenn.1984). Yet, the bankruptcy court gives no indication of getting this standard wrong. Indeed, it wrote at one point that "[b]oth parties concurred that material misrepresentation can be made by omission, or a failure to disclose." Opinion, at 24 (citing *In re Newmark,* 20 B.R. 842, 856 (Bankr.E. D.N.Y.1982).

■ Then, as it should have, the court analyzed whether *each* appellant had reasonably relied upon appellee Ward's nondisclosure about the stock purchases.[3] The court reasoned that since McHenry bound himself to a subscription agreement with Horlings in *May 1980,* he could not have relied upon the nondisclosure by appellee Ward whom he met in *June 1980.* This conclusion is logical and well-grounded on the facts in the record. Likewise, Wiersma signed a stock purchase agreement in May 1980—before he ever met Ward.

■ The bankruptcy court found Knapp to have reasonably relied, *see* Opinion, at 26–27, thus I need not consider him as to this issue on appeal. Last, as appellee points out, there was no evidence presented by appellant Brennan on the question of reasonable reliance, an issue in which he bears the burden of proof. Appellants now argue to this Court that general evidence abounds on the record which demonstrates that Brennan "would not have invested if the true facts [concerning the stock purchase] were known by him." Again, though, this showing is insufficient under § 523(a)(2)(A). The inquiry under this statute must necessarily include proof that Brennan reasonably relied upon *Ward's* nondisclosure of facts concerning the stock purchase. There is simply no testimony on the record concerning this issue as to Brennan and Ward's interaction.

**3.** The precise issue here is not, as appellants suggest, whether any reasonable man would have invested in the stock plan if the true facts were known. In order to prevent discharge of Ward's debt here, *each* appellant must show that he, as the creditor, reasonably relied upon the *debtor Ward's* failure to disclose material facts about the stock purchase plan.

**540**

#### 6. Fraud or Defalcation in Fiduciary Capacity

 Appellants argue that the bankruptcy court committed error by refusing to prohibit discharge under 11 U.S.C. § 523(a)(4). The bankruptcy court, however, properly held that an exception to discharge was not supported by § 523(a)(4). That section prohibits discharge of a debt "for fraud or defalcation while acting in a fiduciary capacity". *Id.* The required elements of proof under § 523(a)(4) are as follows: 1) there must be an express trust status as to the property at issue; 2) the debtor must have been acting in a fiduciary capacity; and 3) the debtor must have breached this relationship by at least defalcation of funds. *In re Interstate Agency,* 760 F.2d 121 (6th Cir.1985).[4] The bankruptcy court quite properly found that appellants introduced no evidence to show that an express trust existed. Opinion, at 28–29. The requirements of an express trust—a clearly defined res, an unambiguous trust relationship, and specific, affirmative duties undertaken by a trustee—were not shown at trial; thus § 523(a)(4) is inapplicable. *See In re Johnson,* 691 F.2d 249, 252–53 (6th Cir.1982) (express trust requirements).

 Although appellants apparently recognize the bankruptcy court's finding that no express trust was established at trial, they focus their argument on the fact that appellee was acting in a fiduciary capacity, thus, they conclude, trusts did exist. According to appellants here, the attorney-client relationship between Ward and both corporations and between Ward and the incorporators of both corporations constitute technical trusts. Appellants also argue that the relationship between Ward, as incorporator of Quality Corporation, and appellants, as shareholders, constitutes a technical trust. Appellants, however, not surprisingly, provide no legal authority to

---

**4.** *In re Interstate Agency* discussed the requirements as to the forerunner of § 523(a)(4), § 17(a)(4) of the old Bankruptcy Act. 760 F.2d at 124.

**5.** *In re Kane* is not on point. *See* 48 F.2d 96 (1931). Nor do the Model Rules establish that a lawful express trust may be created based upon

support these propositions.[5] The lower court did not err in finding that appellants offered "neither evidence nor argument in support of this requisite element." Opinion, at 29.

In sum, therefore, I can find no legal or factual error in the decision of the lower court on the matter before me. Based on the foregoing, then, I affirm the opinion and order of June 7, 1989.

the fiduciary duty of an attorney under the facts here. Appellants have now had and failed at their second try at convincing a court that the relevant fiduciary duty existed, and if it did, that the duty imposed an express trust on the funds in question.