# MATILDA RUDSTROM v. ANNA S. SHERIDAN.[1]

## June 27, 1913.

## Nos. 18,111—(153).

**Bankruptcy — obtaining money by false pretenses.**

Defendant's husband was indebted to plaintiff upon certain overdue obligations which he was unable to pay; in settlement of the same, the husband made and delivered to plaintiff several promissory notes payable at future dates; defendant, the wife, became a joint maker upon those new notes; the husband and wife at the time of the transaction agreed to procure the indorsement of a relative of the wife, who was financially responsible; this they failed to do; the old notes were not surrendered, nor did plaintiff part with any property or property right in reliance upon the agreement to procure such indorsement; defendant subsequently became a bankrupt, and in due proceedings in the bankruptcy court was discharged from all her debts.

It is *held* that the transaction stated did not amount to "obtaining property by false pretenses, or false representations," within the meaning of section 17 of the bankruptcy act of 1903, (32 St. 797, c. 487), and that defendant was by her discharge released from liability on the notes.

Action in the district court for Hennepin county to recover upon three promissory notes. The facts are stated in the opinion. The case was tried before Steele, J., who at the close of the testimony denied the motion of defendant Anna Sheridan to direct a verdict in her favor, and a jury which returned a verdict in favor of plaintiff for $919.75. From an order denying her motion for judgment notwithstanding the verdict or for a new trial, defendant Anna Sheridan appealed. Reversed and judgment ordered for defendant notwithstanding the verdict.

*Arthur W. Selover*, for appellant.

*William B. McIntyre*, for respondent.

1 Reported in 142 N. W. 313.

Brown, C. J.

In June, 1905, Fred Sheridan, the husband of defendant, was indebted to plaintiff in the sum of $650, which he was unable to pay. The indebtedness was evidenced by several overdue promissory notes, and a bank check issued by Sheridan, which had not been paid at the bank for want of funds. In settlement of this indebtedness Sheridan made and delivered to plaintiff his four certain promissory notes, one for $300, two for $100 each, and one for $150, all payable at future dates. Defendant, the wife, became a joint maker of the notes. They have never been paid. Subsequently and in January, 1907, defendant filed her voluntary petition in bankruptcy, and scheduled these notes as liabilities. Due proceedings were had in the bankruptcy court, culminating in the discharge of defendant from all her debts and obligations including the notes in question.

Thereafter plaintiff brought this action to recover upon the notes, claiming that the same were made and delivered by defendant and her husband, and accepted by plaintiff, under certain fraudulent representations of defendant, by reason of which she was not, by her discharge in bankruptcy, released from liability thereon. The question whether plaintiff was induced to accept the notes by the fraud of defendants was the principal issue on the trial. Plaintiff had a verdict and defendant appealed from an order denying her alternative motion for judgment or a new trial. Defendant Fred Sheridan did not appear in the action and the word "defendant," as used in this opinion refers to Mrs. Sheridan.

Two principal questions are presented by the assignments of error: (1) Whether the court erred in admitting certain evidence over defendant's objection, and (2) whether the evidence justifies the conclusion of the fraud relied upon by plaintiff as depriving defendant of the benefit of the discharge in bankruptcy. As the result of our examination leads to the conclusion that the facts presented do not make a case of fraud sufficient to bar defendant of the full benefit of her discharge, we confine our consideration of the case to that question, passing without deciding the question of evidence referred to.

1. Upon the question of fraud the facts are short. It is contended by plaintiff, and the evidence, though explicitly denied by defend-

ant, justified the jury in finding, that, at the time the notes in question were given, defendant and her husband agreed to have the same indorsed by one Joseph Swick, the grandfather of defendant; that, after the notes had been signed by defendant and her husband, they were turned over to the latter for the purpose of obtaining the indorsement of Swick; that they were subsequently delivered to plaintiff with the name of "Joseph Swick" indorsed thereon. The evidence tends to show, though it is far from conclusive, that the indorsement of Swick was a forgery, and was repudiated by him prior to his death, which occurred before the commencement of this action. Plaintiff testified that she would not have accepted the notes had not defendant agreed to procure the indorsement of Swick. There is however no evidence that plaintiff parted with any property or property right as the result of the transaction. No money was paid at the time of the transaction either to defendant or her husband for the notes, the consideration thereof being the existing indebtedness of the husband. This indebtedness, so far as appears, was not secured, and no security was surrendered, or right to enforce the old indebtedness lost. The husband was not released, and the evidence does not show that the old notes were surrendered, and, moreover, it fairly appears that he was wholly unable to pay the debt. In short the transaction amounted to nothing more than the giving of promissory notes for an existing unsecured indebtedness, coupled with an agreement to secure the indorsement of the notes by a third person, and the failure by defendants to secure such indorser.

Upon these facts we are clear that a case of fraud, within the meaning of the bankruptcy act, was not made out.

The bankruptcy act, as amended in 1903 (32 St. 798, c. 487), provides as follows:

"A discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as (1) are due as a tax levied by the United States, the state, county, district, or municipality in which he resides; (2) are liabilities for obtaining property by false pretenses or false representations. * * *" U. S. Comp. St. Supp. 1911, p. 1496.

The question what constitutes "obtaining property" within the

meaning of the statute has not often been presented in cases arising under the .amended statute, and our examination of the reports has brought to light but few decisions bearing upon 'the question. In Gleason v. Thaw, 25 Am. Bank. R. 782, 185 Fed. 345, 107 C. C. A. 463, 34 L.R.A.(N.S.) 894, it was held that attorney's services did not constitute property within the meaning of the statute, though they were obtained by the false and fraudulent representations of the bankrupt that he possessed certain wealth, and that the claim therefor was released by the discharge. It was held in Western Union Storage Co. v. Hurd (C. C.) 116 Fed. 442, that a claim arising from over-payment, made to the bankrupt through mistake, which, on being informed of the mistake, he refused to refund, did not come within the statute. In the case of Wenham, Bankrupt, 153 Fed. 910, it was held that a judgment obtained by a railroad company against a ticket agent for money collected for tickets sold by him, and misappropriated, was not a liability for obtaining property by fraud, and the judgment was held released by the discharge.

While these citations are not precisely in point, they tend to show the view taken of the statutes by the Federal courts, so far as the question has been passed upon. We assume, in the consideration of the question, that Congress intended the language of the statute to be understood in its ordinary signification, and that the purpose of the law was to prevent the bankrupt from retaining the benefits of property acquired by fraudulent means. In order therefore to bring the statute into operation, and prevent the full discharge of the bankrupt it should be made to appear that property of some kind, tangible or intangible, was thus obtained by him. The mere fact that the liability arose in consequence of his fraud is not alone sufficient; the fraud must be followed and result in a loss of property to the creditor.

The rule thus stated, which seems but an expression of the plain purpose of the statute, does not apply to the case at bar. Here plaintiff parted with no property or property right in reliance upon the alleged agreement of defendant to procure the indorsement of Swick. Defendant neither acquired any property, nor did plaintiff, if the statute be construed to cover such a case, part with any property

right. The old notes, for which the new ones were given, were not surrendered, the maker thereof was not released from liability, nor was the right to sue upon the old notes surrendered. The whole foundation of plaintiff's contention that the debt was not released by the discharge rests in the claim that defendant failed to perform an executory agreement to procure the signature of Swick. Clearly there was no "obtaining of property" by false pretenses within the meaning of the statute, and the trial court should have directed a verdict for defendant.

The order appealed from will therefore be reversed with directions to the court below to enter judgment for defendant notwithstanding the verdict.