**In the Matter of Sidney John & Barbara Jean HOLWERDA, Debtors.**

**CENTURY FIRST NATIONAL BANK OF PINELLAS COUNTY, Plaintiff,**

v.

**Sidney John & Barbara Jean HOLWERDA, Defendants.**

**Bankruptcy No. 81–278.**
**Adv. No. 81–450.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

March 14, 1983.

V. James Dickson, St. Petersburg, Fla., for plaintiff.

James Berfield, Clearwater, Fla., for defendants.

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Bankruptcy Judge.

THIS IS a Chapter 7 case and the matter under consideration is a proceeding arising under Title 11 U.S.C. The jurisdiction of this Court is based on Emergency Local Rule (c)(1) and (d)(2).

This adversary proceeding came on for final evidentiary hearing to determine the dischargeability, vel non, of the debt owed to Century Trust National Bank of Pinellas County (Century) by Sidney and Barbara Holwerda, the Debtors in the above-styled Chapter 7 case. Century seeks an exception to discharge of the debt owed it by the Debtors pursuant to 11 U.S.C. § 523(a)(2)(B).

The record as established at trial reveals the following:

Sidney Holwerda, the Debtor, was one of three principals of Range Corporation. The other two principals were Andrew Holwerda, the brother of Sidney Holwerda, and James Gleason. On March 28, 1980, Century Bank made a loan to Range Corp. in the amount of $50,000. As a condition of the loan, Century Bank required Andrew Holwerda, James Gleason, and Sidney and Barbara Holwerda to execute personal guarantees, and required that the three principals submit personal financial statements. The financial statement of Sidney Holwerda significantly overstated his assets and understated his liabilities. This false financial statement is the subject of the present controversy. The parties have stipulated to the fact that the false financial statement made no reference to Barbara Jean Holwerda and that she did not sign the statement, therefore, the complaint against her was dismissed.

The false financial statement in question was dated November 5, 1979. The Defendant, Sidney Holwerda, admitted having prepared the statement with the assistance of his brother, Andrew Holwerda. The statement was originally prepared to obtain a loan for Range Corp. from another bank and the Defendant admits that he intentionally falsified, or "juiced up" his financial statement upon the advice of his brother to enhance the possibility of obtaining a loan. The statement was never presented to that bank.

It is unclear how this November 5, 1979 financial statement came into the hands of the Plaintiff Century Bank. The Defendant had testified at the Creditors' Meeting that he had given the financial statement to Century Bank and admitted to this prior testimony at trial. However, at trial, the

Defendant testified that he had misunderstood the question at the Creditors' Meeting and had believed at that time that he was testifying to having presented his financial statement to Guardian Bank in 1979 in applying for a loan on behalf of Range Corp. At trial, Defendant testified that he had left his financial statement with his brother Andrew and that he did not know that the subject financial statement had ever been requested from or provided to Century Bank. The bank official who represented Century Bank in the loan negotiations with Range Corp. testified at trial that he could not remember how the bank received the Defendant's financial statement.

It is clear from the evidence adduced at trial that the Defendant's brother, Andrew Holwerda, represented Range Corp. in loan negotiations with Century Bank. It is also clear that Century Bank requested, received, and considered the financial statement of all three principals of Range Corp. before approving the loan, including the financial statement of Defendant Sidney Holwerda dated November 5, 1979.

It is without dispute that Sidney executed a written guarantee in favor of Century Bank personally guaranteeing the loan to Range Corp. On October 28, 1980, Range Corp. defaulted on the March 28, 1980 loan leaving $44,900 due and owing in principal plus interest. Pursuant to his guarantee, Defendant Sidney Holwerda is personally liable for the amount owing on the defaulted loan. The Plaintiff seeks to except this debt from the Defendant's general discharge pursuant to 11 U.S.C. § 523(a)(2)(B) which provides:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—

(2) for obtaining money . . . by—

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for obtaining such money . . . reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive.

In order to except a debt from general discharge under § 523(a)(2)(B) all operative elements must be established by the Plaintiff with the requisite degree of proof. It is without dispute that the Defendant's financial statement was materially false in that it indicated that the Defendant had no liabilities, that he owned real property valued at $73,000, had an annual income of $38,000 and had a life insurance policy with a cash value of $20,000. The truth of the matter is that the Defendant's real property valued at $45,000 and was encumbered by a $43,000 mortgage, his life insurance policy had a cash value of less than $4,000 and he had virtually no income at the time relevant to this controversy.

There can also be no doubt that the Defendant prepared the false statement with an intent to deceive, and to obtain money through that deception. It is of no consequence in satisfying the element of intent to deceive that the Defendant did not personally present the false financial statement to the Plaintiff, nor does it make any difference that he intended to deceive another bank rather than the Plaintiff. It is sufficient under § 523(a)(2)(B)(iv) that the Defendant prepared the statement and knew it was false, and that the creditor learned of the statement indirectly and relied on it. See In re Clarence A. Gray, 9 BCD 661, 663, 22 B.R. 676 (Bkrtcy.W.D.Wis. 1982); 3 Collier on Bankruptcy, ¶ 523.-09[5][a] (15th ed. 1982).

There remains then two matters for consideration: whether the Defendant, by acting as guarantor of a corporate debt, "obtained money" within the meaning of § 523(a)(2), and whether the Plaintiff's reliance on the false financial statement was "reasonable" within the meaning of § 523(a)(2)(B)(iii).

There are no cases under the Bankruptcy Code directly addressing the element that the Defendant obtain money by use of a false financial statement. There are,

 

however, two lines of cases interpreting § 14(c)(3) of the Bankruptcy Act which was the precursor to § 523(a)(2)(B) of the Bankruptcy Code. According to one view, unless the debtor actually obtained money or property for himself through false representations, the debt remains dischargeable. *See, Rudstrom v. Sheridan,* 122 Minn. 262, 142 N.W. 313, 314 (1913). The better view, however, appears to be that the debtor need not actually procure the money or property for himself. If the debtor benefits in some way from the property obtained through his deception, the debt is nondischargeable. *See, Hyland v. Fink,* 178 N.Y.Supp. 114, 115 (1919); 3 *Collier on Bankruptcy,* ¶ 523.08[1] (15th ed. 1982). Applying the better view, the Defendant, as a principal of Range Corp., obtained a benefit from the false financial statement when the Bank approved the loan to Range Corp. He, therefore, "obtained money" within the meaning of § 523(a)(2).

The next matter to be considered is whether the Bank reasonably relied on the false financial statement. It is undisputed that the Bank relied, however, mere reliance is not sufficient, because the reliance must have been reasonable. 11 U.S.C. § 523(a)(2)(B)(iii).

■ The primary purpose of bankruptcy law is to relieve the debtor from the burden of indebtedness. *Perez v. Campbell,* 402 U.S. 637, 648, 91 S.Ct. 1704, 1710, 29 L.Ed.2d 233 (1971). The courts, therefore, narrowly construe exceptions to discharge against the creditor and in favor of the debtor. *Gleason v. Thaw,* 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915). Accordingly, the creditor bears the burden of proving that the debt owed to him falls within the statutory exception. *Danns v. Household Financial Corp. (In re Danns),* 558 F.2d 114, 116 (2d Cir.1977); *(In re Cross),* 5 C.B.C. 1549, 1556, 666 F.2d 873 (5th Cir.1982).

■ In the case under consideration, the Plaintiff did not meet its burden of demonstrating that it reasonably relied on the Defendant's false financial statement. The Plaintiff was presented with a five month old financial statement. It appears from the evidence adduced at the trial that the statement was presented to the Plaintiff not by the Defendant, but by a third party, his brother, who was attempting to secure a loan for Range Corp. The Plaintiff was admittedly unfamiliar with the Defendant and with the Defendant's signature. The Plaintiff never inquired of the Defendant whether he in fact executed the financial statement in question or whether the statement accurately reflected his financial position at the time the loan was made to Range Corp. A prudent lender would have, at the very least, made such inquiries and would have required an up-to-date financial statement especially when the statement was not submitted by the Defendant. Under such circumstances, the Plaintiff cannot be said to have relied on Defendant's financial statement, and, if it did in fact rely on the statement, such reliance was not reasonable.

A separate final judgment will be entered in accordance with the foregoing.