In the Matter of William Alan BENSON f/d/b/a B & B Plumbing Co., Debtor.

FIRST NATIONAL BANK AND TRUST COMPANY OF NAPLES, Plaintiff,

v.

William A. BENSON, Defendant.

Bankruptcy No. 83–189.
Adv. No. 83–371.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Nov. 10, 1983.

Louis X. Amato, Maclean, Amato, Arlen & Anderson, Naples, Fla., for plaintiff.

Jeffrey W. Leasure, of Burnett, Brondstetter & Tew, P.A., Fort Myers, Fla., for defendant.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 liquidation case and the immediate matter under consideration is the dischargeability, vel non, of a debt in the amount of $95,000 admittedly due and owing to First National Bank and Trust Company of Naples (Bank) by the Debtor, William Alan Benson (the Debtor), in the above-styled adversary proceeding. The Bank seeks to except from discharge the debt owed it by the Debtor pursuant to § 523(a)(2)(B) of the Bankruptcy Code.

The relevant facts adduced at trial are as follows:

At the time pertinent to the matter under consideration, B & B Plumbing was a plumbing subcontractor on a condominium project known as Grosvener Condominium. B & B was experiencing cash flow problems and needed a loan for short term working capital. On May 2, 1982, the Debtor, who was the president and principal stockholder of B & B, approached Kevin Hale, a loan officer of the Bank, and sought to negotiate a loan on behalf of B & B. Mr. Hale requested a corporate and personal financial statement from the Debtor. On April 4, 1982, the Debtor provided Hale with a corporate financial statement prepared for the financial period ending March 31, 1982. The balance sheet on the corporate financial statement showed $100,000 of preferred stock subscriptions which had ostensibly been subscribed to by an investor. It further appears that earlier in the year, B & B made arrangements to issue the preferred stock to Sunshine Pipe and Supply Company, a large supplier of B & B, as partial payment for supplies received from Sunshine. The stock transaction never fully materialized and Sunshine never received any shares of stock.

On May 6, 1982, the Bank loaned $100,000 to B & B. The loan agreement was signed by the Debtor as president of B & B and also in his individual capacity. As security for the loan, B & B assigned to the Bank $101,062.50 worth of accounts receivable earned from work already performed on the Grosvener Condominium project. In due course, $5,000 was paid to the Bank from the receivable reducing the debt to $95,000. It is without dispute that the Debtor is personally liable on the note and is indebted to the Bank in the amount outstanding on the loan.

The Bank seeks to except this debt from discharge under § 523(a)(2)(B) of the Bankruptcy Code which provides in relevant part:

§ 523. Exception to Discharge

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for obtaining money, property, services or an extension, renewal or refinance of credit, by—

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtors or an insider's financial condition;

(iii) on which the creditor to when the debtor is liable for obtaining such money, property or services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive.

The Bank alleges that B & B never converted its debt owed to Sunshine into preferred stock as represented in the financial statement. By submitting the financial statement, the Bank claims that the Debtor submitted a materially false statement in writing in order to obtain the loan for B & B. Furthermore, the Bank contends that it relied on the financial statement and would not have extended the $100,000 to B & B if it had known that the debt owed by B & B to Sunshine had not been converted into stock.

The language of § 523(a)(2)(B) indicates that the Debtor must obtain money, property, services, or credit and he must obtain it

through fraud as set out in the elements of (2)(B) of § 522(a). There remains then two matters for consideration: whether the Debtor, through his guarantee of a corporate debt, "obtained money" within the meaning of § 523(a)(2) and whether the Bank reasonably relied on the financial statement within the meaning of § 523(a)(2)(B)(iii).

The language of the Code states only that the Debtor must "obtain money, property, services, extension, renewal or refinance credit." Two interpretations of the term have developed under § 17(a)(2) of the Bankruptcy Act which was the predecessor to § 523(a)(2). One view holds that unless the debtor actually obtained money, property, or extension of credit for himself through fraud, misrepresentations, or false pretenses, the debt remains dischargeable. *See, Rudstrom v. Sheridan,* 122 Minn. 262, 142 N.W. 313, 314 (1913). According to the second and better view which was recently adopted by this Court, the Debtor need not actually procure the money or property for himself. If the Debtor benefits in some way from the property obtained through his deception, the debt is non-dischargeable assuming all other elements are satisfied. *Century First National Bank of Pinellas v. Holwerda (In the Matter of Holwerda),* 29 B.R. 486 (Bkrtcy.M.D.Fla.1983); *H.F.C. v. Richmond (In the Matter of Richmond),* 29 B.R. 555 (Bkrtcy.M.D.Fla.1983) and cases cited therein.

Assuming, but not admitting, that the Debtor received a benefit from the loan to B & B, the Bank must still establish the fraudulent aspect of their claim by clear and convincing evidence. *National Bank of North America v. Newmark (In re Newmark),* 20 B.R. 842, 853 (Bkrtcy.E.D.N.Y. 1982); *Brauman Paper Co. v. Neumann (In re Newmann),* 13 B.R. 128, 130 (Bkrtcy.E.D. Wis.1981). Though the facts of *Holwerda, supra* were similar to those in the present case, the creditor in *Holwerda, supra* established all the elements of fraud under § 523(a)(2)(B) with the requisite degree of proof.

Since the primary purpose of Bankruptcy law is to provide the debtor relief from his indebtedness, the courts have narrowly construed exceptions to discharge against the debtor. *Perez v. Campbell,* 402 U.S. 637, 648, 91 S.Ct. 1704, 1710, 29 L.Ed.2d 233 (1971); *Gleason v. Thaw,* 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915). As a result, the courts scrutinize the claims of non-dischargeability with special care. *Waterburg Conn. Teachers Federal Credit Union v. Ciampi,* 14 B.R. 441, 443 (Bkrtcy. 1981).

The Court, after reviewing the record, finds that the Bank failed to show by clear and convincing evidence that they reasonably relied to its detriment on the financial statement submitted by the Debtor on behalf of B & B. Rather, this Court is satisfied that the loan was extended on the basis of the assigned receivables from the condominium project.

In light of the foregoing, this Court is satisfied that the relief sought by First National Bank and Trust Company of Naples cannot be granted.

A separate final judgment will be entered in accordance with the foregoing.