In re Joan M. RUBENSTEIN, Debtor.

James KERNOZEK and Carol Kernozek, Plaintiffs,

v.

Joan M. RUBENSTEIN, Defendant.

Bankruptcy No. 87–2720–8P7.
Adv. No. 87–335.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

June 20, 1989.

Charles Tatelbaum, Tampa, Fla., for plaintiffs.

Cindy Turner, Tampa, Fla., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW

### MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 liquidation case, and the matter under consideration is a Complaint to determine the dischargeability vel non of a debt pursuant to 11 U.S.C. § 523(a)(2)(A) and § 523(a)(2)(B). The Complaint brought by James and Carol Kernozek (Plaintiffs) originally sounded in three counts. The claims in Counts I and II of the Complaint are based on § 523(a)(2)(A) and § 523(a)(2)(B) of the Bankruptcy Code, respectively. The claim in Count III challenges the Debtor's right to a general bankruptcy discharge based upon § 727(a)(2)(A) of the Bankruptcy Code. At the duly scheduled final evidentiary hearing, the Plaintiffs voluntarily dismissed their claim set forth in Count III of the Complaint.

The facts as they appear from the record and established at the final evidentiary hearing are as follows.

At the time relevant, Joan Rubenstein (Debtor) was the principal shareholder of a corporation known as Essex Auto Salvage, Inc. (Essex), d/b/a Big Jim's Auto, located in Essex, Connecticut. It appears that Essex Auto Salvage, Inc., was the owner and operator of a junkyard known as "Big Jim's Auto" located in the same city in Connecticut. On March 6, 1981, the Debtor and the Plaintiff, Carol Kernozek, entered into an agreement whereby the Debtor sold all her stock in Essex. As part of the consideration for the purchase of the stock, Carol Kernozek assumed the existing liabilities of the corporation. It appears that in connection with this transaction, the Debt-

or, upon the request by the Plaintiffs, submitted a written financial statement of Essex, which was distributed to the Plaintiffs. That financial statement failed to disclose a promissory note of Essex', i.e., a liability in the amount of $140,000 based on a promissory note executed by Essex and signed by the Debtor as president of Essex. At the time of the delivery of the financial statement by the Debtor, $80,000 of this note was still outstanding.

It appears that some significant time passed after the consummation of the sale when the Plaintiffs learned of the intention of the Bank who held the promissory note of Essex' to sue Essex on the note. It is undisputed that the Plaintiffs in order to protect their interest in Essex satisfied the obligation of Essex' by paying $80,000 plus attorney's fees and court costs to the Bank.

It is the Plaintiffs' contention that Essex' financial statement submitted by the Debtor to the Plaintiffs was materially false in that it failed to disclose the liability of Essex represented by the promissory note and that the Debtor never informed them of the existence of this note; never gave them a copy of the note, nor did she ever give the Plaintiffs any interest information from the Bank which Essex could have used as possible interest deductions on its corporate tax returns.

Based on this, the Plaintiffs argue that the entire conduct of the Debtor was done with the intent to induce the Plaintiffs into assuming the obligations of Essex and, therefore, the debt of the Debtor to the Plaintiffs should be declared nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and § 523(a)(2)(B) of the Bankruptcy Code.

In opposition, the Debtor contends that she, in fact, disclosed to Mr. Kernozek the corporate liability during her initial negotiations with Mr. Kernozek. The Debtor further argues that she told Mr. Kernozek that she would continue making payments on the demand note even after the closing and that the parties agreed to close the deal notwithstanding the existence of this liability of Essex. In fact, it is undisputed that the Debtor did, in fact, make payments on the note for several months. In addi-

tion, the Debtor also intimates that Mr. Kernozek was extremely interested and would have closed the deal in purchasing the salvage yard, notwithstanding the existence of this corporate liability.

It appears that Mr. Kernozek had been an experienced salvage yard businessman for years, and that all negotiations were done with him and not with Mrs. Kernozek. In fact, Mrs. Kernozek never spoke with the Debtor personally during these negotiations, and admitted that she relied entirely on her husband's version of his negotiations with the Debtor. Based on the foregoing, the Debtor contends that notwithstanding the omission of the liability of the corporation to the Bank on its financial statement, Mr. Kernozek in fact knew of the liability, notwithstanding he proceeded to purchase the shares of the corporation from the Debtor. Based on these, the Debtor contends that she did not make any false representation or financial statement which in turn would warrant the debt allegedly owed by her to be declared nondischargeable pursuant to § 523(a)(2)(A) and § 523(a)(2)(B) of the Bankruptcy Code. As noted earlier, the claim of nondischargeability asserted by the Plaintiff is based on Section 523(a)(2)(A), (B) which provides as follows:

## § 523. EXCEPTIONS TO DISCHARGE

(a) A discharge ... does not discharge an individual from any debt—

(2) for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive....

It should be noted at the outset that it has been long recognized that exceptions to discharge pursuant to § 523 of the Bankruptcy Code should be narrowly construed against the creditor and in favor of the Debtor. *Murphy & Robinson Investment Co. v. Cross*, 666 F.2d 873 (5th Cir.1982). In the instant case, the Plaintiffs seek a declaration from this Court that the $80,-000 which the corporation was required to pay to the Bank pursuant to the promissory note originally executed by the Debtor on behalf of the corporation, which was never disclosed, represents a liability of the Debtor and is a nondischargeable obligation pursuant to § 523(a)(2)(A) and § 523(a)(2)(B) of the Bankruptcy Code.

■ Section 523(a)(2)(A) and (B) of the Bankruptcy Code refers to money, property, services, or an extension or renewal or refinancing of credit obtained by the debtor by false pretenses, misrepresentation of or by actual fraud, or by use of a false statement in writing respecting the debtor's financial condition. In order that a debt may come within the present exception encompassed by § 523(a)(2) of the Bankruptcy Code, the money, property or services or an extension, renewal or refinancing of credit must actually have been obtained by the debtor by the false pretenses or false representations or false financial statement. *Rudstrom v. Sheridan*, 122 Minn. 262, 142 N.W. 313 (1913); *Barbachano v. Allen*, 192 F.2d 836 (9th Cir.1951). In *Rudstrom, supra,* the court stated, inter alia, that

Congress intended the language of the Statute for the purpose of preventing the bankrupt from retaining the benefit of property acquired by fraudulent means. In order, therefore, to bring the Statute into operation and prevent the full discharge of the debtor, it should be made to appear that property of some kind, tangible or intangible, was thus obtained by the debtor. The mere fact that the liability arose as the consequence of the debtor's fraud is not alone sufficient.

This Court is aware that there are a line of cases which hold that it is not necessary that property be actually procured for the debtor himself. *See In re Kunkle,* 40 F.2d 563 (E.D.Mich.1930); *Speir v. Westmoreland,* 40 Ga.App. 302, 149 S.E. 422; *In re Scheffler,* 1 F.Supp. 582 (N.D.N.Y.1932); and *In re Nowell,* 29 B.R. 59 (Bankr.N.D. Miss.1982). These cases, however, can be readily distinguished from the instant case in that they all involved closely held corporations in which the debtor was the sole or majority shareholder and officer while the money was ostensibly obtained by the corporation and which received the money, property or services. The debtors received some indirect benefit from the loan obtained on behalf of the corporation.

Be that as it may, this Court is persuaded that the better view is that the debtor must have either received money, property, services or an extension of credit for himself, or at the very least, derived an actual benefit for himself by use of his false representations or false pretenses or the false statement in writing respecting the Debtor's financial condition.

This was not a loan transaction but a sale and purchase of corporation stock. What the Debtor obtained was the purchase price in exchange for selling her interest in Essex to the Plaintiffs. Thus, the claim of nondischargeability under this section cannot be sustained unless the record warrants the finding that the sale to the Plaintiff was tainted with fraud.

In the instant case the Debtor arguably did receive an indirect benefit by the Plaintiffs' payment of Essex' obligation to the Bank which held the promissory note because the Debtor who guaranteed the note remained personally liable on the obligation and was relieved of any further liability upon a satisfaction of the debt by the Plaintiffs or by corporation.

However, even assuming the Debtor did obtain the purchase price for her share by actual fraud the Plaintiffs still must prove the other elements, that is, that the Debtor made a false representation, or caused to be published, a false financial statement upon which the Plaintiffs reasonably relied.

Without having to consider first whether or not the Debtor, in fact, made a false representation or submitted a false statement to the Court, this Court is satisfied that the Plaintiffs failed to prove with the requisite degree of proof that they relied on either the financial statement or any representations by the Debtor when they purchased the shares of the Essex corporation. It is undisputed that all the negotiations took place between the Debtor and Mr. Kernozek and Mrs. Kernozek has no personal knowledge as to what transpired during the negotiations. In fact, Mr. Kernozek never relied on any financial statement which was prepared by the Debtor or on behalf of the corporation. At the final evidentiary hearing, Mr. Kernozek, the only person who had personal knowledge of the details of the transaction under consideration, was noticeably absent, and only Mrs. Kernozek testified. It is clear from the foregoing that she had no personal knowledge and was unable to testify as to any reliance on the part of her husband on any alleged false representation or false pretenses made or published to her husband. It is equally evident that she could not have relied herself on any alleged representation simply because she was not part of any of the negotiations with the Debtor. It is a well-known legal principle that failure of a party to call a witness who has personal knowledge of the facts surrounding the controversy permits the inference that the testimony of the absent witness would be adverse to the party who is able to obtain the attendance of the witness but failed to do so. Since Mr. Kernozek failed to appear and testify it is clear that there is no competent evidence whatsoever that he relied on anything represented to him by the Debtors either in writing or orally concerning Essex's $80,000 obligation.

Accordingly, the Plaintiffs have failed to meet their burden of proof with respect to this element, and their claims of nondischargeability based on § 523(a)(2)(A) and § 523(a)(2)(B) of the Bankruptcy Code cannot be sustained.

A separate Final Judgment shall be entered in accordance with the foregoing.