In re Donald Richard DENBLEYKER,
Debtor.

National Development Services,
Inc., Plaintiff,

v.

Donald Richard Denbleyker, Defendant.

Bankruptcy No. 98 21277 PAC.
Adversary No. 99 1771 DEC.

United States Bankruptcy Court,
D. Colorado.

Aug. 11, 2000.

Richard D. Clark, Fort Collins, CO, for Debtor.

Jeanne Y. Jagow, Littleton, CO, trustee.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

DONALD E. CORDOVA, Bankruptcy Judge.

The Plaintiff, National Development Services, Inc. ("NDSI"), filed Plaintiff's Motion for Summary Judgment ("Motion") seeking a determination that a state court judgment entered in its favor and against the Defendant is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). The Plaintiff contends that collateral estoppel applies to the facts which form the basis for the state court judgment and that the findings contained within the state court judgment entitle the Plaintiff to judgment on its § 523(a)(2)(A) claim as a matter of law.

The Plaintiff's motion is supported by a Brief in Support of Motion for Summary Judgment ("Plaintiff's Brief"); a certified copy of the Order and Judgment entered September 18, 1997, in the District Court, Arapahoe County, Colorado, Case No. 95CV1874 (Exhibit A to the Motion) ("State Court Judgement"); an uncertified copy of the unpublished Order entered January 21, 1999, by the Colorado Court of Appeals, Case No. 97CA2183 (Exhibit B to the Motion); and a certified copy of the Order and Judgment upon Remand from the Colorado Court of Appeals entered September 20, 1999, in the District Court, Arapahoe County, Colorado, Case No. 95CV1874 (Exhibit C to the Motion). The Plaintiff has also filed a Supplemental Brief in Support of Summary Judgment ("Plaintiff's Supp. Brief"), to which the Plaintiff has attached an uncertified partial transcript of the bench trial held on July 1, 1997 before the District Court, Arapahoe County, Colorado, in Case No. 95CV1874 ("Trial Transcript").

The Defendant, Donald Denbleyker, filed Defendant's Response to Plaintiff's Motion for Summary Judgment and Supporting Brief ("Defendant's Brief") as well as Defendant's Response to Court's Order for Supporting Brief ("Defendant's Supp. Brief").

## JURISDICTION

This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334. This proceeding seeks to determine the dischargeability of a particular debt and is therefore a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and (J). Venue is proper pursuant to 28 U.S.C. § 1409.

## FACTS

The parties do not dispute the facts. In 1995, Plaintiff NDSI, the general contractor for a commercial construction project in Aurora, Colorado, filed a complaint in the Denver District Court naming one of its masonry subcontractors, JDB, Inc., as well as JDB's general manager, Donald Richard Denbleyker, as defendants. Although the majority of the claims were directed at JDB, Inc. for breach of the subcontract, NDSI asserted a separate claim against Mr. Denbleyker, individually, for intentional misrepresentation. NDSI alleged that, in order for JDB to receive payment on the subcontract, Mr. Denbleyker intentionally misrepresented that JDB had paid all of its suppliers and that JDB had completed the work for which it sought payment. NDSI asserted that Mr. Denbleyker made the representations to NDSI knowing that they were false and intending that NDSI would rely upon

them. NDSI claimed that it justifiably relied upon Mr. Denbleyker's representations and such reliance caused NDSI damages. NDSI also alleged that Mr. Denbleyker's intentional misrepresentations entitled NDSI to an award of exemplary or punitive damages.

The state court granted summary judgment in favor of NDSI on the breach of contract claims against JDB, however it left the issues of damages and the intentional misrepresentation claims against Mr. Denbleyker for trial. The court conducted a bench trial on the complaint on July 1, 1997, and the court entered an Order and Judgment on September 18, 1997, wherein the court ruled, among other things, that Mr. Denbleyker was liable to NDSI for intentional misrepresentation.

In arriving at its verdict against Mr. Denbleyker on NDSI's intentional misrepresentation claim, the state court made the following specific findings:

> The Court concludes that Ms. Baron was the person who drafted the formal applications for payment. She did this using the information supplied to her by Mr. Denbleyker. Mr. Denbleyker clearly knew that the Iliff Street project was not completed as set forth in the written payment applications. It is reasonable to conclude, and the Court specifically finds, that Mr. Denbleyker provided false information to Ms. Baron so that JDB could bill and receive payment for work allegedly done on the Iliff Street project. Accordingly, the Court finds that the plaintiff has established its third claim for relief against Mr. Denbleyker by a preponderance of the evidence.

September 18, 1997 Order & Judgment, p. 3 (Exhibit A).

The state court also made findings and conclusions with respect to NDSI's claim against Mr. Denbleyker for exemplary damages in connection with Denbleyker's intentional misrepresentation. The court noted that punitive damages may be awarded only if the plaintiff shows, beyond

a reasonable doubt, that the defendant's conduct was accompanied by circumstances of fraud, malice or willful and wanton conduct. On this claim, the court made the following findings:

> The Court finds that, although plaintiff has established its fraud claim by a preponderance of the evidence, its level of proof does not establish the rigorous requirements for exemplary damages. In the first instance, plaintiff established no proof that Mr. Denbleyker personally profited from his conduct. No evidence was adduced to suggest that he improved his standing with JDB. He clearly caused misleading information to be transmitted to the plaintiff. However the Court does not find that his acts were, beyond a reasonable doubt, accompanied by the type of malice which gives rise to punitive damages.

September 18, 1997 Order & Judgment, p. 3 (Exhibit A).

Based on these findings and conclusions, along with the court's previous findings with respect to the claims against the corporate defendant, JDB, the state court entered judgment in favor of NDSI and against JDB and Mr. Denbleyker, jointly and severally, in the sum of $26,744.00, with interest thereon at the rate of 8% per annum from October 2, 1995. The Court also entered judgment in favor of NDSI and against JDB and Mr. Denbleyker, jointly and severally, for attorneys fees of $836.85, with interest thereon at the rate of 8% per annum from January 28, 1997, and costs in the amount of $674.25.

Both defendants, JDB and Mr. Denbleyker, appealed the state court judgment to the Colorado Court of Appeals with respect to the court's verdict on the intentional misrepresentation claims and the court's computation of damages. The Colorado Court of Appeals affirmed the trial court's finding that Mr. Denbleyker was liable to NDSI for intentional misrepresentation, however it concluded that the trial court erred in computing damages. The

appellate court vacated the trial court's award of damages and remanded the issue of damages to the trial court for proper calculation.

On remand, the trial court reevaluated the issue of damages and entered an amended judgment in favor of NDSI and against JDB in the principal sum of $27,440.02 with interest at 8% per annum from April 20, 1995. The Court also entered an amended judgment in favor of NDSI and against Mr. Denbleyker in the principal sum of $26,744.00 with interest at 8% per annum from August 29, 1995. The Court also entered an amended judgment in favor of NDSI and against JDB and Mr. Denbleyker, jointly and severally, for attorney fees, in the sum of $836.85, with interest at 8% per annum from January 28, 1997, and costs in the sum of $674.25. This judgment is final.

On August 12, 1998, Mr. Denbleyker filed a petition under Chapter 7 of the Bankruptcy Code.

## DISCUSSION

Summary judgment is governed by Fed. R.Civ.P. 56, which is made applicable to adversary proceedings by Fed.R.Bankr.P. 7056. The standard for the granting of summary judgment has been stated by the Tenth Circuit Court of Appeals as follows:

Summary judgment is appropriate when the materials submitted to the court "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." What facts are material depends on the substantive law being applied. Although we view the evidence in the light most favorable to the party opposing summary judgment, disputes about immaterial facts will not preclude summary judgment. Should a non-moving party make some showing on a material issue, we must consider the standard of proof in the case (here, a preponderance of evidence) and decide whether the showing is sufficient for a reasonable trier of fact to find for the non-moving party on that issue. A scintilla of evidence in favor of the non-moving party is not enough to preclude summary judgment. Moreover, should a non-moving party not make a sufficient showing on any essential element of his case, all other facts are rendered immaterial, and summary judgment is appropriate.

*Kaiser–Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir.1989) (citations omitted). *See also, Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The Plaintiff here seeks to prove the elements of its § 523(a)(2)(A) claim based upon the record, particularly the State Court Judgment and the findings of fact contained therein. Although the determination of whether a debt is dischargeable is exclusively within the province of the bankruptcy court, *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 658, 112 L.Ed.2d 755 (1991) (citing *Brown v. Felsen*, 442 U.S. 127, 129–130, 136, 99 S.Ct. 2205, 2209–2211, 60 L.Ed.2d 767 (1979)), the facts which may form the basis for such a determination may be litigated in state court. *See In re Tsamasfyros*, 940 F.2d 605, 606–607 (10th Cir.1991). The doctrine of collateral estoppel is applicable in bankruptcy dischargeability proceedings. *See Grogan*, 498 U.S. at 285, 111 S.Ct. at 658. The Tenth Circuit Court of Appeals has specifically held in these actions that:

Collateral estoppel is binding on the bankruptcy court and precludes relitigation of factual issues if (1) the issue to be precluded is the same as that involved in the prior state court action; (2) the issue was actually litigated by the parties in the prior action; and (3) the state court's determination of the issue was necessary to the resulting final and valid judgment.

*In re Wallace,* 840 F.2d 762, 764 (10th Cir.1988); *see also, Tsamasfyros,* 940 F.2d at 606–607; *In re Mueller,* 34 B.R. 869 (Bankr.D.Colo.1983); *In re Austin,* 93 B.R. 723 (Bankr.D.Colo.1988).

There is no doubt that collateral estoppel applies to the State Court Judgment. The issue heard by the state court, whether the Defendant made intentional misrepresentations to the Plaintiff, is the same as the issue presently before the Court in this proceeding. Furthermore, the parties litigated the issue fully at trial, and the state court determination of the Defendant's liability on the claim of intentional misrepresentation was necessary to the State Court Judgment. Indeed, the Defendant does not challenge the application of collateral estoppel with respect to the State Court Judgment. However, the Defendant does challenge whether findings contained in this State Court Judgment satisfy *all* of the necessary elements of § 523(a)(2)(A). Thus, the only issue for this Court to address is whether the State Court Judgment sets forth sufficient facts to establish the elements of an action under § 523(a)(2)(A).

11 U.S.C. § 523(a)(2)(A) provides that a discharge under 11 U.S.C. § 727 does not discharge an individual debtor from a debt—

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
> > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A).

■ To establish that a claim is subject to this exception from discharge, the plaintiff must prove: 1) the debtor made a false representation; 2) with the intent to deceive the creditor; 3) the creditor relied on the false representation; 4) the creditor's reliance was justifiable; and 5) the false representation resulted in damages to the creditor. *Field v. Mans,* 516 U.S. 59, 71, 116 S.Ct. 437, 446, 133 L.Ed.2d 351 (1995); *Fowler Brothers v. Young (In re Young),* 91 F.3d 1367, 1373 (10th Cir.1996). These elements must be proved by a preponderance of the evidence. *Grogan,* 498 U.S. at 287, 111 S.Ct. at 659.

Although the Defendant acknowledges that collateral estoppel applies to the State Court Judgment in this proceeding, he asserts that the State Court Judgment fails to prove the necessary element that he "obtained money or property" as a result of his misrepresentations. The Defendant, citing numerous bankruptcy court and circuit court opinions, argues that before a debt arising from fraud can be declared nondischargeable under § 523(a)(2)(A), the Plaintiff must prove that the Defendant obtained some benefit from his fraud. According to the Defendant, the Plaintiff is not entitled to summary judgment because the State Court Judgment lacks findings that the Defendant benefitted from his fraud.

The Defendant's argument hinges on the validity of the so-called "receipt of benefit" theory which suggests that the § 523(a)(2) exception to discharge applies only when a plaintiff can prove that the money or property was obtained by fraud *and* that the debtor received some benefit from the fraud. *See Simmons v. Wade (In re Wade),* 43 B.R. 976 (Bankr.D.Colo.1984). In *Wade,* the court addressed the issue of whether a debtor must actually and personally receive the money or property or services in order for the § 523(a)(2)(A) exception to apply. The *Wade* court examined three lines of cases interpreting how the statute's use of the phrase "obtained by" should be construed.

■ According to *Wade,* one line of cases interpreting § 523(a)(2) requires a plaintiff to show that the debtor actually obtained money or property *for himself* through false representations before the debt can be declared to be nondischargeable. *See id.* at 980–981 (citing *Rudstrom v. Sheridan,* 122 Minn. 262, 142 N.W. 313, 314 (1913)). The *Wade* court identified a

second line of cases representing the opposite view whereby the exception "applies plainly to all obtaining of property by the bankrupt, whether for himself or for anybody else." *Wade*, 43 B.R. at 981 (citing *In re Kunkle*, 40 F.2d 563 (E.D.Mich. 1930)). The *Wade* court also noted the existence of the "receipt of benefits" line of cases. *See id.* Under the "receipt of benefits" approach, a plaintiff is not required to show that the debtor actually received the property himself, but must demonstrate that the debtor benefitted in some way from the fraud. *See id.* (citing *Hyland v. Fink*, 178 N.Y.S. 114, 115 (1919)).

The *Wade* court concluded that the "receipt of benefits" line of cases represented the correct interpretation of what "obtained by" means in § 523(a)(2). The court reasoned that the "benefits" approach was more consistent with the principles of statutory construction and that it accorded with the principle that exceptions to discharge should be narrowly construed in favor of the debtor. *See id.* Thus, *Wade* held that a plaintiff must establish that the debtor benefitted in some way from the fraud for the debt arising from the fraud to be excepted from discharge. *See id.*

In recent years, the "receipt of benefits" approach adopted by *Wade* has dominated the case law examining this issue. All four circuit courts of appeal that have addressed the issue have endorsed the "benefits" approach. *See Brady v. McAllister (In re Brady)*, 101 F.3d 1165 (6th Cir. 1996); *HSSM # 7 Ltd. Partnership v. Bilzerian (In re Bilzerian)*, 100 F.3d 886 (11th Cir.1996), *cert. denied*, 523 U.S. 1093, 118 S.Ct. 1559, 140 L.Ed.2d 791 (1998); *Luce v. First Equip. Leasing Corp. (In re Luce)*, 960 F.2d 1277 (5th Cir.1992); *Ash-*

*ley v. Church (In re Ashley)*, 903 F.2d 599 (9th Cir.1990). Likewise, several bankruptcy courts have endorsed the "benefits" view.[1]

Despite what appears to be overwhelming authority supporting the "benefits" view, this restrictive interpretation of § 523(a)(2)(A) impermissibly conflicts with the Supreme Court's more recent and expansive interpretation of the language and policy of the provision in *Cohen v. de la Cruz*, 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998). In *Cohen*, the Supreme Court clarified that § 523(a)(2)(A) prevents the discharge of *all* liabilities arising from a debtor's fraud. In so holding, the Court rejected the argument that the § 523(a)(2)(A) exception does not apply to punitive or exemplary damages, but only to the portion of the damages awarded in a fraud action that correspond to the actual value of the money, property, or services obtained by the debtors fraud. *See id.* The Court ruled that § 523(a)(2)(A) applies broadly to all liabilities arising from a debtors fraud, including treble damages assessed on account of the fraud. *See id.* The *Cohen* Court relied upon the statute's construction, its history, and the underlying policy of the fraud exception to reach its conclusion. The "receipt of benefits" approach conflicts with the Court's reasoning in each of these three areas.

First, the *Cohen* Court based its decision on the basic construction of § 523(a)(2)(A). The Court began its analysis by stating that the phrase "obtained by" refers simply to causation:

The most straightforward reading of § 523(a)(2)(A) is that it prevents discharge of any debt respecting money, property, services, ... or credit that the

1. *See e.g., Wade, supra; Metcalfe v. Waters (In re Waters)*, 239 B.R. 893 (Bankr.W.D.Tenn. 1999); *Zirkel v. Tomlinson (In re Tomlinson)*, Nos. 96 B 27172, 96 A 1539, 1999 WL 294879 (Bankr.N.D.Ill.1999); *Barber v. Martin (In re Martin)*, 154 B.R. 490 (Bankr.C.D.Ill.1993); *McHenry v. Ward (In re Ward)*, 115 B.R. 532 (W.D.Mich.1990); *Kartchner v. Kudla (In re Kudla)*, 105 B.R. 985 (Bankr.D.Colo.1989); *Bates v. Winfree (In re Winfree)*, 34 B.R. 879 (Bankr.M.D.Tenn.1983); *Century First Nat'l Bank of Pinellas Co. v. Holwerda (In re Holwerda)*, 29 B.R. 486 (Bankr.M.D.Fla.1983); *but see Jacobs v. Mones (In re Mones)*, 169 B.R. 246 (Bankr.D.D.C.1994).

debtor has fraudulently obtained, including treble damages assessed on account of the fraud. *See Field v. Mans,* 516 U.S. 59, 61, 64, 116 S.Ct. 437, 440–441, 133 L.Ed.2d 351 (1995) (describing § 523(a)(2)(A) as barring discharge of debts 'resulting from' or 'traceable to' fraud.).

*Id.* at 218, 118 S.Ct. at 1216 (omissions in original).

Importantly, the Court refuted any idea that the phrase "obtained by" could be interpreted as limiting the application of the statute in any way, stating:

> Moreover, the phrase "to the extent obtained by" in § 523(a)(2)(A), as the Court of Appeals recognized, does not impose any limitation on the extent to which "any debt" arising from fraud is excepted from discharge. . . . The phrase thereby makes clear that the share of money, property, etc., that is obtained by fraud gives rise to a nondischargeable debt. Once it is established that specific money or property has been obtained by fraud ... "any debt" arising therefrom is excepted from discharge.

*Id.* These affirmative statements clearly indicate that the Supreme Court interprets the phrase "obtained by" as referring only to causation. In other words, the phrase asks "how" the money or property was obtained. If it was obtained by fraud, then the statute is applicable. Furthermore, the *Cohen* Court emphatically rejected the proposition that the "obtained by" language imposes any other requirements or restrictions on the applicability or scope of the statute.

While *Cohen* instructs that the phrase "obtained by" inquires into the single question of "how" the money or property was procured, the "receipt of benefits" approach interposes the additional question of "who benefitted" from the fraud. Thus, for a debt to be excepted from discharge under the "receipt of benefits" approach, one must prove not only the causation element by showing that the money or property was procured *by* fraud, but one must also prove the additional "benefit" element by showing that the fraud benefitted the debtor in some way.[2] Requiring plaintiffs to prove this additional "benefit" element is inconsistent with the interpretation of the phrase as expressed by the Court in *Cohen.*

The history of the fraud exception defines the second area of conflict between *Cohen* and the "receipt of benefits" theory. The *Cohen* Court explained that its liberal reading of the § 523(a)(2)(A) exception to discharge was consistent with the history of the fraud exception. *See id.* at 221, 118 S.Ct. at 1217–1218. Quoting from *Brown v. Felsen,* 442 U.S. 127, 138, 99 S.Ct. 2205, 2213, 60 L.Ed.2d 767 (1979), the Court concluded that its broad holding conformed to the historical development of the statute. In *Brown,* the Supreme Court noted that the statutory evolution of § 523(a)(2) implies that Congress intended

---

**2.** The *Wade* case itself demonstrates how the "benefits" approach imposes this additional "benefit" element. In *Wade,* the plaintiffs sued their investment adviser seeking damages for their lost investments and a determination that these damages were nondischargeable pursuant to various sections of 11 U.S.C. § 523. With respect to certain damages that the court did not except from discharge, the *Wade* court held that the plaintiffs had not satisfied their burden of proof under § 523(a)(2)(A). According to the court, the plaintiffs had failed to prove that the debtor had personally received the money or benefitted from the plaintiffs' investment in any way. *See Wade,* 43 B.R. at 982. Despite its ac-knowledgment later in the opinion that the debtor had defrauded the plaintiffs on this particular investment, *See id.,* the *Wade* court found this particular debt to be dischargeable because the plaintiffs had not proven that the debtor had benefitted in any way. *See id.* Not only did the *Wade* court require that the plaintiffs prove the that the investment be obtained by fraud (the "how" element), but also that the investment benefitted the debtor in some way (the "who benefitted" element). Because the plaintiffs failed to satisfy the court-created requirement that the debtor benefitted in some way from the fraud, the debt was discharged.

a broad application of the discharge exception with respect to debts arising from fraud:

> In the 1898 Bankruptcy Act, Congress provided that only "judgments" sounding in fraud would be excepted from a bankrupt's discharge. In 1903, Congress substituted "liabilities" for "judgments." The amendment, said the accompanying House Report, was "in the interest of justice and honest dealing and honest conduct," and it was intended "to exclude beyond peradventure certain liabilities growing out of offenses against good morals." This broad language suggests that all debts arising out of conduct specified in § 17 should be excepted from discharge....

*Id.* (citations omitted).

While the holding of the *Cohen* Court accords with the historical liberalization of § 523(a)(2)(A), the "receipt of benefits" approach runs against this development by imposing additional limitations on the applicability of the statute. The history of the fraud exception is clear in that the exception is meant to prevent the discharge of all liabilities arising from fraud. The history of the statute evinces an effort to eliminate loopholes from the exception. Because the "benefits" approach creates an additional unsanctioned loophole, it is incompatible with the history of the exception and the holding of *Cohen.*

The policy of the fraud exception highlights the third area of conflict between *Cohen* and the "receipt of benefits" theory. The *Cohen* Court explained that its broad interpretation of the fraud exception dovetailed with the policy objectives of the fraud exception. *See id.* at 222–223, 118 S.Ct. at 1218–1219. The Court observed that:

> the various exceptions to discharge in § 523(a) reflect a conclusion on the part of Congress "that the creditors' interest in recovering full payment of debts in these categories outweigh[s] the debtors' interest in a complete fresh start."

*Cohen,* 523 U.S. at 222, 118 S.Ct. at 1218 (citing *Grogan,* 498 U.S. at 287, 111 S.Ct. at 659–660).

The Court explained that the limitation on the statute proposed by the debtor in *Cohen* would "allow the debtor to discharge any liability for losses caused by his fraud in excess of the amount he initially received, leaving the creditor far short of being made whole." *Id.* at 223, 118 S.Ct. at 1218. Such a result, the Court concluded, "would not square with the intent of the fraud exception," noting that it " 'is unlikely that Congress ... would have favored the interests in giving perpetrators of fraud a fresh start over the interest in protecting victims of fraud.' " *Id.* at 223, 118 S.Ct. at 1219 (quoting *Grogan,* 498 U.S. at 287, 111 S.Ct. at 659–660).

*Cohen* demonstrates that the "receipt of benefits" interpretation of the statute is in conflict with the policy of the fraud exception. Like the limitation on the statute proposed by the debtor in *Cohen,* the "receipt of benefits" requirement would permit a debtor to discharge any liability for losses caused by his fraud that were not proven to benefit the debtor in some way. As *Cohen* observed, this result would leave the creditor far short of being made whole, and such a result would not square with the policy of the fraud exception. The "benefits" approach is inconsistent with both the policy of the fraud exception and *Cohen.*

■ After reviewing the statute, the case law supporting applying the "receipt of benefits" interpretation, and *Cohen,* this Court is convinced that the "benefits" line of cases has been abrogated by the broad interpretation of the statute set forth in *Cohen.* The *Cohen* decision implies that § 523(a)(2)(A) prevents the discharge of all liabilities arising from a debtor's fraud, *regardless* of whether the plaintiff proves that the debtor benefitted in any way. Accordingly, this Court holds that once a plaintiff establishes the elements set forth in *Field v. Mans, supra,* i.e., that the debtor obtained money or property by

fraud, any debt arising from the fraud is excepted from discharge.

In this case, the State Court Judgment establishes that the Defendant fraudulently obtained money from the Plaintiff for JDB, Inc. Section 523(a)(2)(A) does not require that the Plaintiff prove that the Defendant benefitted in any way from his fraud. The Court finds that the Plaintiff has satisfied all the elements of its § 523(a)(2)(A) through the application of collateral estoppel to the State Court Judgment and therefore concludes that the Plaintiff is entitled to judgment as a matter of law.

For the reasons stated herein, it is hereby

ORDERED that the Plaintiff's Motion for Summary Judgment is GRANTED. A separate judgment shall enter.